[Civ. No. 19240. Second Dist., Div. Two. Apr. 3, 1953.]

THE CITY OF LOS ANGELES, Respondent, v. J. H. FISKE et al., Defendants; A. N. HEXTER et al., Appellants.

S. V. O. Prichard for Appellants.

Ray L. Chesebro, City Attorney, Charles F. Reiche, Assistant City Attorney, and Peyton H. Moore, Jr., Deputy City Attorney, for Respondent.

MOORE, P. J.—This action was instituted to condemn certain parcels of land under the eminent domain power. While no question is raised as to the right of the city to condemn the parcels, a serious controversy rages with respect to the appraisals approved by the court. A reversal of the judgment below is demanded on the ground of alleged inadequacy of the award.

The parcels condemned are included in a subdivided area north of and adjacent to Moorpark Street which runs in an

east-west direction. On the west of the subdivision is Laurel Canyon Boulevard, formerly Pacoima Avenue. The tract is numbered 8582, and a map of it is recorded in Book 163 in the office of the county recorder. The area directly involved is shown in a drawing presented herewith. To the north of the

parcels condemned and extending southeasterly across Moorpark Street is a 200-foot right of way for the Tujunga Wash Channel. The southerly ends of Lots 1, 37, 38, 39, 40, 41 and 42 are the parcels taken by the judgment. The shaded area below them is covered by an easement for street purposes in favor of the city of Los Angeles. It is marked Moorpark-N to indicate that it is politically a part of Moorpark Street on its north side while the easement adjacent to that street on its south side is marked Moorpark-S. Moorpark street is a paved boulevard 50 feet wide and has been so maintained for a long time.

### Sufficiency of Description

■ Appellants contend that the descriptions used by the city in condemning the property were inadequate. That such contention is baseless is readily demonstrable. The legal description in the complaint of "Parcel 1" which is identical with the descriptions of the other parcels except for lot numbers is as follows:

"That portion of Lot 1, Tract No. 8582, as per map recorded in Book 163, Pages 31 and 32 of Maps, in the office of the County Recorder of Los Angeles County, lying southerly of the southwesterly line of the Tujunga Wash Channel, 200 feet wide, as described in Final Judgment had in Case No. 518236 of the Superior Court of . . . the County of Los Angeles, a certified copy thereof being recorded in Book 23923, Page 83, Official Records, in the office of the County Recorder of said County." Such descriptions are identical with those used by appellants to acquire the lots in question. In each the number of the lot is followed by the tract number, with reference to the book and page of the map's records, which in turn is followed by: "lying Southerly of the Southerly line of the 200 foot flood control channel described in Notice of Complaint filed in Action No. 518236 in Superior Court of the State of California, in and for the County of Los Angeles. . . . Subject to: . . . Conditions, Restrictions, Reservations, Covenants, Rights of Way, and Easements now of record, if any."

Surely, it cannot be seriously contended that the city could not properly have used the same descriptions by which appellants acquired the parcels. ■ In view of the law that ownership of a city lot extends to the center of the adjoining street, appellants had title to the area south of the parcels condemned to the center of Moorpark Street. It logically fol-

lows that in this proceeding by alleging the description contained in the deeds to appellants, the city acquired the underlying fee to the center of Moorpark Street. This includes, of course, the underlying fee of Moorpark-N, shaded on the accompanying plot. In view of the acceptance by the city of the offers to dedicate Moorpark Street and Pacoima Avenue, now Laurel Canyon Boulevard, the description by reference to the appropriate map was proper. (Bus. & Prof. Code, § 11657.) The city thus took whatever interest appellants had. (See Civ. Code, § 1112; *Anderson* v. *Citizens Sav. & Trust Co.,* 185 Cal. 386, 392 [197 P. 113]; *Earl* v. *Dutour,* 181 Cal. 58, 60 [183 P. 438, 6 A.L.R. 1163]; *Severo* v. *Pacheco,* 75 Cal.App.2d 30, 35 [170 P.2d 40].)

Appellants assert that the term "Moorpark Street" in the city's ordinance of public interest and necessity is ambiguous and inconsistent. Such is not the fact. In the first section of the ordinance of public interest and necessity, the term Moorpark is used to designate the general area needed for playground uses.* By section 2, in order to avoid ambiguity, the area to be condemned was described as "those portions of lots 1, 37, 38, 39, 40 and 41, lying southerly of the southwesterly line of the Tujunga Wash Channel." This clearly describes the shaded (Moorpark-N) areas as that needed for playgrounds. In referring to Moorpark Street in the ordinance, no interpretation is to be indulged other than that generally applied, namely, when a highway is referred to in a grant the reference is to the highway as opened and actually used. (11 C.J.S., p. 590, § 36.)

### NECESSITY FOR CONDEMNATION

Appellants assert that Moorpark-N is subject merely to a "paper" easement; that the resolution of necessity for playground purposes is inevitably inconsistent with necessity for highway purposes, and that therefore the trial court should have considered the easement as vacated and considered the total fee value of both Moorpark-N and the stub-end lots in making the award.

Section 1241 of the Code of Civil Procedure provides: ". . . 2. . . . when . . . the legislative body of . . . an in-

---

*"The Council of the City of Los Angeles finds and determines that the public interest and necessity require the acquisition in fee by the City of Los Angeles of certain real properties, for public playground and recreation purposes, located northerly of and adjacent to Moorpark Street between Ben Avenue and Laurel Canyon Boulevard, hereinafter in Section 2 of this Ordinance more particularly described."

corporated city . . . shall, by resolution or ordinance, adopted by vote of two-thirds of all its members, have found and determined that the public interest and necessity require the acquisition, construction or completion, by such . . . city . . . of any proposed public utility, or any public improvement, and that the property described in such resolution or ordinance is necessary therefor, such resolution or ordinance shall be conclusive evidence; (a) of the necessity of such proposed public utility or public improvement; (b) that such property is necessary therefor, and (c) that such proposed public utility or public improvement is planned or located in the manner which will be most compatible with the greatest public good, and the least private injury. . . ." By virtue of such statute, the acquisition of the stub-ends and adjacent Moorpark-N was therefore conclusively determined by the ordinance of public interest and necessity to be necessary for use by the city. Contrary to appellants' contention, the action of the city council does not mean that only a "paper easement" for highway purposes is retained. Neither, as a matter of substantial justice, should it be deemed vacated.

■ The power to vacate a city street is vested solely in the municipality. The act of vacating can be done only upon a finding that the property in question is unnecessary for present or future uses as a street. (Sts. & Hys. Code, §§ 8300-8331.) ■ Courts are powerless to interfere with municipal control except upon convincing evidence of fraud, arbitrary action or an abuse of discretion. (See *People* v. *City of San Rafael*, 95 Cal.App. 733, 740 [273 P. 138]; *People* v. *City of Pomona*, 88 Cal.App.2d 460, 466 [198 P.2d 959].)*

■ There is no necessary inconsistency between the city's two distinct interests in Moorpark-N. Nor is there a merger. The future necessity of Moorpark-N for street purposes is borne out by the reports of the Planning Commission and the city engineer. In view of the obligation of the city as a trustee to maintain the easement for highway purposes for the use of all the people of the state, there could be no merger therewith of the city's playground interest, simply because it acquired the underlying fee of Moorpark-N for playground purposes. (*People* v. *County of San Marin*, 103 Cal. 223, 231-232 [37 P. 203, 26 L.R.A. 659]; *Las Posas Water Co.* v. *County of Ventura*, 97 Cal.App. 296, 301 [275 P. 817].)

---

*The power to vacate a city street is not to be confused with the abandonment of highways by counties where a roadway has been impassable for five consecutive years. (Sts. & Hys. Code, §§ 945, 957.)

## Determination of Value

■ Appellants scorn the city's easement over Moorpark-N as a "paper easement" and contend that in evaluating the property condemned, the court should have disregarded the "paper easement." They assert the property should have been treated "as an entire corner." But appellants fail to note that in view of the subsisting street easement, the underlying fee remaining in Moorpark-N has only a nominal value. The possibility of abandonment of the easement is so remote and speculative that it can add no value to appellants' interest. (*Romero* v. *Department of Public Works,* 17 Cal.2d 189, 194 [109 P.2d 662] ; *San Gabriel* v. *Pacific Elec. R. Co.,* 129 Cal. App. 460, 466 [18 P.2d 996].)

Since it was neither alleged nor proved that Moorpark-N has any underlying oil or minerals or any other resource of value other than the building that could take place thereon, its higher market value in October, 1950, must have depended upon the possibility of appellants' commercial use of the area. Not only was such use not available because of the unvacated city easement, but the area was restricted to R-4 structures. As stated above, there is no evidence that the city in October of 1950 or at any time intended to abandon the easement. Hence, the asserted "potential right to the reversionary interest" in the area was valueless. But even assuming the certainty of vacation of the easement, no business could have been conducted on Moorpark-N or the stub-end lots in violation of the R-4 zoning restriction. Hence, appellant Hexter's opinion that his "potential right" to have the easement vacated, coupled with the opportunity to use it, was worth $51,000 means nothing in view of the tremendous hindrances to be overcome before the area could be utilized commercially. Similarly, the testimony of witness Frisbie as to a value of $37,258 is based upon not only the stub-end parcels, but also upon the underlying fee of Moorpark-N, which in view of the valid easement and the zoning restrictions could have only a nominal value. A proper valuation of Moorpark-N was demonstrated to the satisfaction of the trial court by the testimony of expert witnesses Lockwood, Packard, and Gastlin in asserting that the stub-ends were worth not to exceed $5,950; the fee underlying Moorpark-N, only a nominal sum.

### "Injustice and Oppression"

■ Appellants' charges of "injustice" and "oppression" in the award have no factual basis. Appellants paid

$900 for the stub-end parcels in 1947; by the judgment of the trial court they were allowed $9,680, a profit in excess of 1,000 per cent. This is scarcely the "next to nothing" complained of by appellants. It should be noted, moreover, that the sum allowed is nearly twice the amount that three expert witnesses testified the parcels are worth.

### RULINGS ON EVIDENCE

 Respondent's file No. 35070 was properly received into evidence, despite the objections of appellants. Once appellants had offered certain documents contained in that file for the purpose of proving they had applied for a vacation of the easement, it was proper for the city to show that the application had been denied on recommendation of the city engineer and city planning commission, thus demonstrating the improbability of the vacation of any part of the easement over Moorpark-N. The city council's denial of appellants' petition is scarcely a hearsay utterance "made in the absence of the opposite party." On the contrary, it was a legislative action—the minutes of which were a reply to the petition. The cases cited by appellants (*Hughes* v. *Pacific Wharf & Storage Co.*, 188 Cal. 210 [205 P. 105]; *Hotaling* v. *Hotaling*, 187 Cal. 695 [203 P. 745]) do not involve action by a legislative body. Neither of them is pertinent.

Appellants assign as prejudicial error the receipt into evidence of a copy of a report by the public works committee to the city council on October 29, 1951, in reference to appellants' petition for vacation of the Moorpark-N easement. The report read in part "that such areas will be required in the future for highway purposes; also the City Planning Commission . . . recommended that this vacation be disapproved. We recommend, as recommended by the City Engineer and the City Planning Commission that the request for vacation be denied." Appellants claim that under section 8323 of the Streets and Highways Code* the report was inadmissible because the exhibit itself fails to show by its terms affirmatively that the property on which the vacation

---

*"The city council shall, on the day fixed for the hearing, or on the day to which the hearing is postponed or continued, hear the evidence offered by any person interested. If the city council finds from all the evidence submitted, that any street or part thereof, described in the ordinance of intention, is unnecessary for present or prospective public street purposes, the city council may make its order vacating such street or part thereof."

was requested was neither needed for a street nor the existence of any prospective use of the property as a street. Because that section contains no requirement for such a finding by the city council, the point demands no further discussion.

Judgment affirmed.

McComb, J., and Fox, J., concurred.