**CITY OF DALLAS, Appellant,**

v.

**Sarah H. LEAKE et al., Appellees.**

**No. 15217.**

Court of Civil Appeals of Texas.

Dallas.

Feb. 15, 1957.

Rehearing Denied March 15, 1957.

H. P. Kucera, City Atty., Ted P. Mac-Master and Chas. C. Wells, Asst. City Atty., Dallas, for appellant.

Burford, Ryburn, Hincks & Ford, Clarence Guittard, H. Sam Davis, Jr., and Jerome T. Ragsdale, Dallas, for appellees.

DIXON, Chief Justice.

This suit in trespass to try title was filed by Sarah H. Leake and others against the City of Dallas and Hart Investment Company, a corporation. Plaintiffs sued for title and possession of a strip of land 32 feet wide adjacent to a line where the west track of the Houston & Texas Central Railway formerly lay, which strip of land runs a distance of one city block between Elm Street and Pacific Avenue in Dallas, Texas. The city claims the land became part of a street known as North Central Avenue. As the interests of plaintiffs and Hart Investment Company proved not to

be adverse, the latter party aligned itself with the plaintiffs.

The case was tried to a jury, which returned answers favorable to plaintiffs and Hart Investment Company. The court rendered judgment based on the jury verdict. Only the City of Dallas has appealed.

The common source of title was shown to be Williams and Hindman, who prior to April 22, 1897 owned Block 148, City of Dallas, which included the strip of land in controversy.

### Claim of City of Dallas

The City of Dallas claims fee simple title to the 32-foot strip in question through the following chain of title:

(1) By deed dated April 22, 1897, Williams and Hindman conveyed to Houston & Texas Central Railroad Company a part of their Block 148 in the City of Dallas, the part conveyed being the 32-foot strip of land in controversy. This instrument is unusual. It was signed by both grantors and grantee. As its proper interpretation and legal effect are subjects of controversy in this case, we here copy material parts of it:

"Know All Men By These Presents: That we, W. L. Williams, and Mrs. F. M. Hindman, joined by her husband, Jas. R. Hindman, in consideration of the building and maintaining of a new and permanent brick or stone passenger depot at the crossing of the Houston and Texas Central and Texas and Pacific Railroads in the southeast angle of said roads and near the junction thereof by the Houston and Texas Central Railroad Company, or by said Company in connection with the said Texas and Pacific Railroad Company, during the year 1897, or as soon thereafter as practicable, and for other considerations hereinafter mentioned, do by these presents grant and convey and set apart *for the use* of said Houston and Texas Central Railroad Company and said Texas and Pacific Railroad Company, *and for use as a sidewalk for foot passengers for the benefit of said railroads and ourselves jointly*, the following described lot, tract or parcel of land, to-wit: (here follows the description of the 32-foot strip of land).

"To Have And To Hold unto the said Houston and Texas Central Railroad Company and to the said Texas and Pacific Railroad Company, *their successors and assigns and ourselves, our heirs and assigns jointly* for the permanent use of said parties *for the purpose aforesaid* forever.

"It is understood, however, that that portion of the land above described which is leased for the year, 1897, shall continue in the use and occupancy of our tenants until the first day of January, 1898, when *we obligate ourselves to clear the same by removing all buildings and platforms as soon as possible, and the said Railroad Companies as a further consideration for the grant herein made agree and bind themselves to fill in the land hereinbefore described with sand and gravel, and to construct a good substantial gravel platform upon a level with the track of the said Houston and Texas Central Railroad Company, as soon as practicable after said land shall be cleared of the houses, etc., for that purpose.*

"It is further understood that *the ground herein granted is to be used for persons passing on foot and for the use of trucks, and other vehicles drawn by hand for the purpose of transferring baggage, express and mail matter, but in no event shall the same be used by vehicles drawn by electricity or other means than hand power.*

"*And we further obligate ourselves to prevent any encroachments by the erection of sheds, platforms, fruit stands or other structures upon the land herein described; provided however, that the right to display and exhibit for sale goods, wares and merchandise upon a space three feet wide along the entire western boundary of the tract of land herein granted, is hereby reserved to us, our heirs and assigns.*" (Emphasis ours.)

(2) On August 30, 1898, W. L. Williams executed an instrument including a plat sub-dividing Block 148 within the City of Dallas. Appellant claims that this map and plat had the effect of dedicating the 32-foot strip as a street. As this plat is also a subject of controversy in this suit, we present a copy of it:

(3) On June 30, 1934, Houston & Texas Central Railway executed a deed including the strip in question to its successor, Texas & New Orleans Railroad Company.

(4) On August 14, 1947, Texas & New Orleans Railroad Company executed a deed to the City of Dallas, which deed included the strip in controversy.

The city further claims that appellees Leake et al., and T. F. Hart Investment Company, by reason of many acts on their part together with use of the strip by the public as a street for many years, are estopped to deny its dedication for use as a street.

### Claim of Leake et al.

Appellees Leake et al. claim title to Lots 6 through 12 of Block 148 and that part of the 32-foot strip abutting on said Lots through the following chain of title:

(1) Deed of April 22, 1897, from Williams and Hindman to Houston & Texas Central Railroad Company (same instrument as No. 1, above).

(2) Plat dated August 30, 1898, by W. L. Williams subdividing Block 148 (same instrument as No. 2 above).

(3) Deeds from Williams and Hindman and their successors of Lots 6 through 12 of Block 148 to the predecessors in title of Leake et al.

(4) Judgment dated November 27, 1931, in cause 25,388, 14th District Court, Dallas County, Texas, styled B. F. Word et al. v. H. & T. C. Railroad Co. This suit was brought by Hart Investment Company and the predecessors in title of Leake et al. for possession of the strip in controversy. The judgment was for defendant H. & T. C. Railroad Company for the reason that the deed of April 22, 1897, conveyed to the railroad an easement which the railroad had not abandoned; but the judgment further held that title was in the plaintiffs, and that in the event use of the 32-foot strip was abandoned by the railroad, then possession of the strip would revert to the plaintiffs.

(5) The undisputed evidence shows that subsequent to the rendition of the above judgment and prior to the filing of the instant suit, Texas & New Orleans Railroad Company, successor of Houston & Texas Central Railroad Company, had abandoned use of the strip.

### Claim of Hart Investment Company

Hart Investment Company claims title to Lots 1 through 5 of Block 148 and that part of the 32-foot strip· abutting on said lots through a chain of title similar to that of Leake et al.

It also claims title by deed dated July 5, 1919, from the widow of W. L. Williams and the sole heir of J. R. Hindman to T. F. Hart in fee simple to all of the grantors' reversionary interest in the 32-foot strip.

### Jury Findings

In answering special issues the jury found that (1) the land involved was not continuously used and traveled by the public generally for street purposes for any period of ten years or more preceding November 12, 1949, the date when this suit was filed; (3) the City of Dallas prior to August 14, 1947, the date of its deed from Texas & New Orleans Railroad Company, had notice of rights claimed by plaintiffs and Hart Investment Company under the judgment of November 27, 1931; (4) the use, if any, made by the public of the strip of land in question lying east of Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12, of Block 148 was by permission of plaintiffs and Hart Investment Company; (5) Hart Investment Company held exclusive, peaceful, and adverse possession of that part of the strip in question immediately east of Lots 1, 2, 3, 4, and 5 of Block 148, using same for a period of three years after January 3, 1921 and prior to November 12, 1949; and (6) W. L. Williams and Mrs. F. M. Hindman did not before November 12, 1949, dedicate the strip in question to public use for street purposes by filing a map or plat of Williams and Hindman's subdivision of Block 148, or by

the sale of lots with reference to said plat, or by permitting the public generally to use said strip.

## Conclusions

Appellant's first three points on appeal challenge the court's action in overruling motions for instructed verdict presented after appellees rested, and at the close of the testimony, and in overruling appellant's motion for judgment non obstante veredicto. ·

In support of its first three points appellant City of Dallas contends that, (a) the map and plat of August 30, 1898, showing the 32-foot strip open at both ends, amounted as a matter of law to a dedication to the public of the area in question for street purposes; (b) each of the lots involved here, being Lots 1 through 12 in Block 148, having been bought with reference to the map or plat, plaintiffs and Hart Investment Company acquired title only to the west line of the 32-foot strip, since the deed of April 22, 1897, conveyed fee simple title to the strip to Houston & Texas Central Railroad Company; (c) the deed dated June 30, 1934, from Houston & Texas Central Railroad Company to Texas & New Orleans Railroad Company conveyed fee simple title to the latter company; (d) the deed dated August 14, 1947, from Texas & New Orleans Railroad to the City of Dallas conveyed to the city all the railroad's title to the 32-foot strip; (e) even if the judgment of November 27, 1931, declaring the deed of April 22, 1897, conveyed only an easement to the railroad, be considered a valid binding judgment, the map and plat of August 30, 1898, by Williams and Hindman must be considered a valid dedication of the strip for street purposes, since as a matter of law a private and a public easement on the same strip may coexist—in other words, the fee title of plaintiffs and Hart Investment Company would be subject both to an easement in favor of the railroad for its purposes and to an easement in favor of the public for street purposes; (f) only a few deeds to Lots 1 through 12

of Block 148 carry a reversionary clause to plaintiffs' predecessors and these deeds were all executed after the plat and map of August 30, 1898, was filed, hence cannot affect the dedication in the plat; and (g) the judgment of November 27, 1931, does not operate as res adjudicata as to appellant City of Dallas.

To begin at the common source of title: We must hold that the deed of April 22, 1897, from Williams and Hindman to Houston & Texas Central Railroad Company did not convey fee simple title to the 32-foot strip to the Railroad Company. (1) This is evident, we think, from the nature and terms of the instrument itself. It was executed by both grantors and grantee. When a grantor conveys to himself and others, his intention will ordinarily prevent the grantees from taking the entire estate. Lutz v. Dutmer, 286 Mich. 467, 282 N.W. 431 (syls. 22 and 23); Green v. Cannady, 77 S.C. 193, 57 S.E. 832; 26 C.J.S., Deeds, § 13, p. 600. (2) Further, the instrument expressly states that the ground conveyed is for "use as a sidewalk for foot passengers *for the benefit of said railroads and ourselves jointly.*" (Emphasis ours.) It strictly limits use of the strip to pedestrians and hand-drawn vehicles. It obligates Williams and Hindman to prevent encroachments, but reserves to them the right to display merchandise. It obligates the railroad to fill in the land with sand and gravel. Plainly the instrument conveys something less than the fee title. (3) The judgment of November 27, 1931, holds that the instrument of April 22, 1897, conveyed only an easement to the railroad, and that fee title remained in the grantors; and further, that upon abandonment of use by the railroad, possession should revert to the grantors. Later in this opinion we shall explain why we believe this judgment is binding on appellant.

We do not agree with appellant that the filing of the map and plat of August 30, 1898, had the effect as a matter of law of dedicating the 32-foot strip **as a**

street. Examination of the map discloses that Elm and Preston Streets and Pacific Avenue are shown and plainly marked on the plat. They are the only streets shown and marked. The strip in question is shown on the plat as a mere blank space open at both ends. If the grantors intended to dedicate the strip as a street, why did they not so mark it? We see nothing in the plat to indicate an intention to dedicate the strip as a street. We think that the applicable rule of law is correctly stated in City of Brownsville v. West, Tex.Civ. App., 149 S.W.2d 1034, at page 1037: "The rule is that a dedication is in the nature of a donation of one's land to the public for a public use without consideration, and therefore is never presumed but must be manifested either by a declaration or act which evinces the clearest intention on the part of the dedicator to presently set aside and appropriate a certain part of his land for a public use. Corpus Juris Vol. 18, p. 52, announces the rule as follows: 'Irrespective of how the dedication is claimed to be made, in order to constitute a valid dedication there must be an intention on the part of the owner to devote his property to the public use, and the intention must be clearly and unequivocally manifested, whether the dedication is claimed by acts in pais or by solemn conveyance of record.'" See also City of Tyler v. Smith County, 151 Tex. 80, 246 S.W.2d 601; City of Houston v. Scanlan, 120 Tex. 264, 37 S. W.2d 718; and Cockrell v. City of Dallas, Tex.Civ.App., 111 S.W. 977.

Appellant says that the intention to dedicate the strip as a street is evidenced by showing it on the plat with both ends open. We see no merit in this contention. It is just as reasonable to say, in fact we think more reasonable to say that the strip was left open on the plat because of the easement granted to the railroad in the deed of April 22, 1897. Being under use as part of its right-of-way by the railroad, the strip extended as did the railroad. It has been held that the mere fact that a vacant strip is shown on a map is not sufficient to show a dedication. Oswald v. Grenet, 15 Tex. 118; Ladies' Benevolent Society of Beaumont v. Magnolia Cemetery Co., Tex. Com.App., 288 S.W. 812; Steinaur v. City of Tell City, 146 Ind. 490, 45 N.E. 1056; Earle v. McCarty, Fla., 70 So.2d 314; Fisher v. Carpenter, 36 Kan. 184, 12 P. 941. Appellant cites us the cases of Kimball v. City of Chicago, 253 Ill. 105, 97 N.E. 257, and Ingraham v. Brown, 231 Ill. 256, 83 N. E. 156. The two cases are not in point. In both cases the open strip lay between a block and the railroad right-of-way. In neither of the cited cases did the railroad have an interest in the strip as it did in the case now before us.

From what we have said it will be apparent that we do not agree with appellant's contentions hereinbefore, lettered (a) through (g). Therefore we overrule appellant's first three points on appeal.

In its fourth and fifth points appellant says that the court erred in admitting into evidence, over appellant's objection, a copy of the judgment dated November 27, 1931, for the judgment had not been recorded in the deed records of Dallas County, as required by Art. 6638, V.A.C.S., when on August 14, 1947, for a valuable consideration appellant succeeded to all the rights of the Texas & New Orleans Railroad Company in the strip in controversy; and, further, the court erred in overruling appellant's motion to strike said judgment, since there was no evidence of probative force that appellant had actual or constructive notice of the existence of the judgment.

The 1931 lawsuit was brought by Hart Investment Company. The plaintiffs in this suit were parties in the 1931 suit, as was the Houston & Texas Central Railroad Company, appellant's predecessor in title.

We think the copy of the judgment was admissible in evidence against appellant. Art. 6638, V.A.C.S., has been interpreted to mean that an unrecorded judg-

ment is admissible in evidence against all subsequent purchasers except those who pay a valuable consideration without notice. Permian Oil Co. v. Smith, 129 Tex. 413, 73 S.W.2d 490, 107 S.W.2d 564, 111 A.L.R. 1152; Henderson v. Lindley, 75 Tex. 185, 12 S.W. 979; Smith v. Wofford, Tex. Civ.App., 40 S.W.2d 883.

■ We hold as a matter of law that appellant took with notice because of the nature of the deed of August 14, 1947, from Texas & New Orleans Railroad Company to appellant. The instrument is in effect a quitclaim deed. It does not contain a general warranty of title to the property. It conveys no more than the "rights, title, and interest of the grantor." In Cook v. Smith, 107 Tex. 119, 174 S.W. 1094, 1095, 3 A.L.R. 940, our Supreme Court said: "The character of an instrument, as constituting a deed to land or merely a quitclaim deed, is to be determined according to whether it assumes to convey the property described and upon its face has that effect, or merely professes to convey the grantor's title to the property. If, according to the face of the instrument, its operation is to convey the property itself, it is a deed. If, on the other hand, it purports to convey no more than the title of the grantor, it is only a quitclaim deed." The rule is that one who is a grantee in a quitclaim deed is not an innocent purchaser without notice, but must take notice of all defects in the title of his grantor. Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286; Simonds v. Stanolind Oil & Gas Co., 134 Tex. 332, 114 S.W.2d 226, 136 S.W.2d 207; Cook v. Smith, supra; 43–B Tex.Jur. 72. Appellant does not have the status of an innocent purchaser without notice. Therefore Art. 6638, V.A.C.S., is not applicable. The copy of the judgment was admissible in evidence.

■ Article 7391, V.A.C.S., provides that any final judgment shall be conclusive as to the party against whom it is rendered and upon all parties claiming title from, through, or under such party. Therefore the judgment of 1931 is binding on appellant.

■ Moreover, the jury found as a fact that appellant had notice of the rights claimed by plaintiffs and Hart Investment Company under the 1931 judgment, and in our opinion the jury's finding is amply supported by the evidence. The Vice-President of Hart Investment Company testified that he told appellant's attorney that Hart claimed the land. Appellant's attorney wanted Hart to donate the strip. This negotiation took place while appellant's attorney was also negotiating with the railroad. The President of Hart Investment Company testified that he talked with the city's mayor about the 32-foot strip and, among other things, he said he offered to sell it to the city. This testimony, if believed by the jury, was, under the circumstances, notice to appellant. City of Ft. Worth v. Davidson, 117 Tex. 89, 296 S.W. 288, 298 S.W. 421; Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286. Since appellant had heard that plaintiffs and Hart claimed the land, it should have made inquiry of them. If appellant failed to do so, the law nevertheless would affect appellant with notice of such facts in reference to the title as were within the knowledge of plaintiffs and Hart. Bounds v. Little, 75 Tex. 316, 12 S.W. 1109.

■ In its sixth point appellant says that it acquired the deed to the 32-foot strip from the railroad by threatening to exercise its right of eminent domain, therefore the abandonment of the strip was not voluntary, and could not give appellees a right to claim a reversion. The deed of August 14, 1947, makes no reference to any condemnation proceeding. The deed recites that the instrument was "pursuant to the terms of that certain agreement between it and the City of Dallas * * * relating to Central Boulevard Project * * *." Appellant does not point out any evidence of any threat by

the City to condemn the property, or that the agreement and deed was a compromise of a threatened condemnation proceeding.

Let us suppose the city, instead of acquiring the railroad's interest by quitclaim deed, had carried out its alleged threat to condemn the railroad's interest in the strip. We must remember that the railroad's interest was merely an easement to use the strip for railroad purposes. Such a condemnation would doubtless have rid the property of the easement formerly owned by the railroad if the city chose not to continue it in effect. But it would not entitle the city to impose an entirely new and different easement without consulting and compensating the owners of the fee title. In this case the city certainly did not intend to continue to use the property for the purpose authorized under the terms of the railroad's easement; that is, for railroad purposes. It intended to use the property for street purposes. This was not a use authorized under the railroad easement. A condemnation of property will not enlarge the grant made in the deed under which the condemnee held. To use the strip for street purposes would have had the effect of burdening the property with a new and entirely different easement. Before this new burden could be imposed on the property, the holders of the fee title would have to be taken into account. When property is taken, the condemner must take into consideration both the owner of the dominant estate and the owner of the servient estate. This being true of a condemnation itself, it would also be true of a deed executed in settlement of the threatened condemnation, for the threatened condemnee could not convey a greater interest than it owned, regardless of whether such deed be considered a voluntary or involuntary conveyance, or abandonment.

To support a contrary view, appellant city relies on State of Texas v. Harris County Houston Ship Channel Navigation Dist., 5 Cir., 158 F.2d 861. In our opinion the holding in the above cited case does not support appellant's view as applied to this case. In the cited case the State of Texas had made a grant of part of its interest in Buffalo Bayou to the Navigation District, but retained certain rights for itself. Then the United States condemned the whole fee title, which included both the interest of the Navigation District and the retained interest of the State of Texas. In other words, both the dominant and the servient estates were taken under condemnation. The court held that both the State of Texas and the Navigation District were entitled to compensation. Had the United States settled with the property owners by deed instead of condemning the property, it of course would have had to obtain deeds from both the State of Texas and the Navigation District, not from the District alone.

Appellant's seventh point asserts that the court erred in defining the term "adverse" in the charge. The court gave a definition in substantial compliance with the statutory definition. Art. 5515, V.A.C.S. Appellant objected because the court did not inform the jury what elements should be considered in the meaning of the word "adverse." Among these elements were: the city policed the property; United States mail was delivered there; a sidewalk was built; et al. In our opinion the definition given by the court was correct. An instruction on the alleged elements, as desired by appellant, would have been a comment on the weight of the evidence. Pinchback v. Hockless, 138 Tex. 306, 158 S.W.2d 997. We overrule appellant's seventh point.

Appellant's eighth, ninth and tenth points complain of the court's overruling a motion to disregard the jury's answers to special issues Nos. 3, 4, and 5. The grounds are that said answers had no support in the evidence. In their answers the jury found that (3) the city had notice of the judgment of November 27, 1931; (4) use made by the public of the strip in controversy was by permission of plaintiffs, Hart, and their predecessors in title; and (5) Hart Investment Company held exclusive, peaceful,

and adverse possession of that part of the strip immediately east of Lots 1, 2, 3, 4, and 5, using and enjoying same for a period of three years or longer after January 3, 1921, and prior to November 12, 1949.

Appellant presented thirteen witnesses, plaintiffs seven, and Hart three. The record is long and we shall not attempt to reproduce the testimony at any considerable length. Suffice it to say there is testimony in the record to this effect: The city never did grade, gravel, pave, or maintain the 32-foot strip; before the railroad tracks were removed, a stone or concrete curb was built by the city along the north line of Elm Street, abutting the strip; there was erected a sign, "No Trespassing, Railroad Property"; people sat at tables in the strip playing dominoes, especially in summer time; truck drivers parked on Elm Street or Pacific Avenue to make deliveries to the strip; on one occasion the city started a water line and dug a trench on the strip, but Mr. Word (Leake's predecessor) stopped them and the hole was covered up; the strip was used by the railroad until the tracks were removed in 1947; after the tracks were removed Hart fenced the Pacific Avenue part; city street cleaners never came on the property; the tenants, not the city, paved the strip and fixed holes; the tenants cleared trash out of the strip, each tenant contributing $2 to hire a man to clean up the strip; salesmen sold quick sales stuff on the strip, such as cosmetics; patent medicine vendors put on entertainments; one tenant would put a table and chairs out on the strip in front of his place and charge a dime per game; Charlton & Word (Leake's predecessors) for years back had claimed ownership of the strip; the tenants encouraged pedestrians to come onto the strip, as it helped business.

 In our opinion the evidence above amply supports the jury's answer to special issues Nos. 4 and 5. As to special issue No. 3, we have already discussed the evidence in regard to actual notice to the city of appellees' claim under the judgment of November 1931, so we shall not repeat it. We overrule appellant's eighth, ninth and tenth points.

Appellant's eleventh point alleges that the court erred in overruling a motion to disregard the jury's answer to special issue No. 6 because said issue presented only a question of law. Special issue No. 6 was as follows: "Do you find from a preponderance of the evidence that before November 12, 1949, W. L. Williams and Mrs. F. M. Hindman dedicated the strip of land in question to public use for street purposes by filing a map or plat of Williams and Hindman's subdivision of Block 148 of the City of Dallas in the Deed Records of Dallas County, Texas, and by the sale of lots with reference to said plat and permitting the public generally to use said strip? * * * Answer: They did not dedicate the same."

 We agree with appellant that whether the map or plat of Williams and Hindman's subdivision of Block 148 of itself shows a dedication of the strip in controversy to public use for street purposes, is a question of law. In our discussion of appellant's first three points we held that the plat did not as a matter of law amount to such a dedication of the strip. Therefore the jury's answer that "They did not dedicate the same" could not have harmed appellant so far as the plat was concerned. But special issue No. 6 by its wording goes further. It asks also whether the strip was so dedicated by the sale of lots with reference to said plat, and by permitting the public generally to use it. Certainly the last presents a fact question which was included in the negative answer of the jury. We overrule appellant's eleventh point.

The judgment of the trial court is affirmed.