**MIDWESTERN DEVELOPMENTS, INC.,
Appellant,
v.
The CITY OF TULSA, OKLAHOMA, a
Municipal Corporation, Appellee.
No. 9097.**

United States Court of Appeals
Tenth Circuit.
March 20, 1967.
Rehearing Denied April 27, 1967.

Robert J. Woolsey, Tulsa, Okl., for appellant.

John Robert Seelye, Asst. City Atty., for appellee.

Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.

MURRAH, Chief Judge.

Midwestern Developments brought this action to quiet its title against the City of Tulsa to a strip of land 60 feet wide crossing a certain quarter section in Tulsa. The complaint contained a second count in reverse condemnation. A claim of requisite amount arising under federal statutes provides the necessary jurisdictional basis. And see Midwestern Developments, Inc. v. City of Tulsa, Okla-

homa, 10 Cir., 333 F.2d 1009.[1] The land in suit previously comprised the north 60 feet of the 150 feet MK & T Railroad right-of-way. Under threat of condemnation, the railroad agreed to and did convey to the city in 1955 the surface rights for highway purposes only in the 60 feet strip in question, along with similar rights in the south 60 feet of the right-of-way, reserving to itself the mineral rights in and under both strips of land. The Broken Arrow expressway now occupies the north and south portions of the right-of-way and the railroad continues to operate on the center 30 feet. The ultimate question presented is whether the railroad's conveyance of the surface rights to the city for highway purposes amounted to an abandonment of this portion of the right-of-way easement so as to vest the entire title in the owner of the servient estate. In findings and conclusions based on stipulated facts the trial judge held that MK & T's predecessor acquired the right-of-way under the Act of March 2, 1899, 30 Stat. 990, which contained no reversionary proviso —not under the Act of February 28, 1902, 32 Stat. 43, which did contain a reversionary proviso—thus there were no grounds for a claim of statutory abandonment; [2] that although under the Act of 1899 the railroad acquired an easement,[3] MK & T's conveyance to the city did not result in an abandonment under general law of the north 60 feet of that easement. See Midwestern Developments, Inc. v. City of Tulsa, Oklahoma, D.C., 259 F.Supp. 554. Judgment was entered for the city, and we affirm.

Midwestern derives its asserted interest from the following transactions. By mesne conveyances one Evelyn English Bresser acquired title to the quarter section here in question "less the right-of-way of MK & T Railroad". In 1957 she and her husband conveyed by warranty deed to Midwestern that portion of the quarter section "lying North of the MK & T right-of-way and South of 31st Street". In 1960 the Bressers by quitclaim deed conveyed to Midwestern that portion of the quarter section "lying North of the MK & T Railroad and subject to a right-of-way of the MK & T Railroad, and lying South of 31st Street".

After the first conveyance from the Bressers to Midwestern but before the second, the city condemned a portion of Midwestern's tract abutting the land in suit on the north, together with all "abutter's rights". The city contended in the trial court that because of this condemnation, and for other reasons, Midwestern had not proven its title to the servient estate in the north 60 feet of the right-of-way and, therefore, had no right to attack the city's title. Because of his decision on the abandonment ques-

1. See Midwestern Developments, Inc. v. City of Tulsa, Oklahoma, 10 Cir., 319 F.2d 53, for other procedural aspects of this case.

2. There is no question here of reversion under § 14 of the Act of April 26, 1906, 34 Stat. 137. See St. Louis-San Francisco Railway Co. v. Walter, 10 Cir., 305 F.2d 90, and cases cited in footnote 6. Here the entire quarter section was conveyed by the tribe to the allottee, and there is thus no tribal interest to be disposed of by § 14.

3. In concluding that the MK&T owned but an easement the court reasoned that the land was restricted when the right-of-way was originally acquired and the fee could not be conveyed unless clearly and expressly authorized by the Act of 1899; that the Act of 1899 did not grant such authority; that the original deed provided for conveyance of such rights in the right-of-way as could be conveyed under the 1899 Act; and that interests acquired under Acts similar to the 1899 Act have consistently been held easements. See St. Louis-San Francisco Railway Co. v. Walter, supra; St. Louis-San Francisco Railway Co. v. Town of Francis, 249 F.2d 546; Fitzgerald v. City of Ardmore, 281 F.2d 717, which assumed without deciding that right-of-way acquired under the 1899 and 1902 Acts was an easement. The city says it "does not concede that the deed conveyed an easement, but feels that the determination of that question is unnecessary at this point"; later in its brief it opines that "this court would probably construe the grant in question as conveying a base fee". But, the trial court concluded that an easement only was conveyed. We are not asked to review that conclusion and assume its correctness.

tion, Judge Barrow did not feel compelled to rule on the issues concerning the strength of Midwestern's title, although he did state his thinking for the record.[4] For purposes of our decision we assume without deciding that Midwestern owns the servient estate in the north 60 feet of this right-of-way easement.

The following stipulated facts are pertinent to the question of which Act controlled the acquisition of the right-of-way. On January 9, 1902, the MK & T's predecessor duly filed an application with the Secretary of the Interior for permission to survey, locate, construct, operate and maintain a railroad across parts of Oklahoma and Indian Territories pursuant to the Act of 1899. The Secretary found the application was made in good faith, and with the intention and ability to construct the line, and on January 14, 1902, approved the application and granted the requested permission. Thereafter, the proposed route was surveyed and maps filed with the Secretary. The maps were approved in August of 1902 (after the February 28 passage of the Act of 1902), subject to the provisions of the Act of 1899. Construction began sometime in 1902.

The line as surveyed crossed the quarter section in controversy. That quarter section was allotted to a female freedman, Clydie Landrum, and deeded to her in November, 1902. In September, 1902, Clydie's mother as her natural guardian executed a "Right-of-Way Deed" which purported to convey a 150 foot strip across the quarter section to the railroad "in fee simple forever", but which further provided that "This deed is made * * * under authority of the provisions of the Act of Congress of March 2, 1899, and is intended to convey all such rights as said party of the first part may lawfully convey * * * under the provisions of said Act of Congress and the laws of the United States * * *."

Plausible arguments can be made on both sides of the question of which Act controls. The governing statutory provision is § 23 of the 1902 Act which repealed the 1899 Act, subject to the proviso that "* * * such repeal shall not affect any railroad company whose railroad is now actually being constructed, or any rights which have already accrued; but such railroads may be completed and such rights enforced in the manner provided by the laws under which such construction was commenced or under which such rights accrued * * *." No finding was made that actual construction began prior to passage of the Act of 1902, and concededly the right-of-way was not deeded to the MK & T's predecessor until September of 1902. This being so, Midwestern contends the Act of 1902 controlled. The city on the other hand argues in effect that acquisition of the right-of-way was a "right" which "accrued" prior to passage of the Act of 1902; that the contemporary departmental correspondence uniformly supports this view; and that even if the 1902 Act controlled, the reversionary proviso in § 2 of that Act was intended to apply only to the Enid and Anadarko Railway and, therefore, did not apply to the acquisition of this right-of-way. Judge Barrow concluded that the Act of 1899 controlled on the theory that once the survey maps were approved the right-of-way grant was perfected and the rights of the railroad related back to the date of the first approval, January 14, 1902. And see Wisconsin Central Railroad Co. v. Price County, 133 U.S. 496, 10 S.Ct. 341, 33 L.Ed. 687; Southern Pacific Railroad Co. v. United States, 183 U.S. 519, 22 S.Ct. 154, 46 L.Ed. 307; St. Louis-San Francisco Railway Co. v. Walter, 10 Cir., 305 F.2d 90.

■■ As we view the case, the question of which Act controlled acquisition of the right-of-way is immaterial; for in a case involving the reversionary pro-

---

4. Ordinarily in a suit to try title to realty, the party having the affirmative of the suit must prevail on the strength of his own title, not the weakness of his ad-

versary. See Williams v. Pacific Royalty Company, 10 Cir., 247 F.2d 672; Settles v. Atchison, Topeka and Santa Fe Railway Co., Okl., 318 P.2d 867.

viso in the Act of 1902 we specifically held that "This statutory test of abandonment, although controlling, is not different from the general rule applicable in reversionary cases, to the effect that when land is granted for a specified purpose, it reverts when it ceases to be used for the purpose for which it was granted." Oklahoma City-Ada-Atoka Railway Co. v. City of Ada, 10 Cir., 182 F.2d 293, 295. And, under both statutory and general law, whether the land's use for the purpose granted has ceased is usually a question of the intent of the parties as manifested by their conduct. And see generally Anno., Railroad Right-of-Way —Abandonment, 95 A.L.R.2d 468.

The trial judge's conclusion that there had been no abandonment was based on his finding that the MK & T's purported retention of the mineral rights in and under the north 60 feet of its right-of-way was consistent with its asserted fee ownership and negated an intent to abandon; that the law abhors forfeitures and favors the duration of rights-of-way so long as compatible with railroad use; and, moreover, under the rule of Woodville v. United States, 10 Cir., 152 F.2d 735, there was no abandonment in the circumstances of this case.

We cannot agree that there was no intent to abandon this easement for railroad purposes. By conveying the surface rights to the city for highway purposes only, the MK & T " 'completely destroyed' the means of using it for the purposes for which it was reserved." Oklahoma City-Ada-Atoka Railway Co. v. City of Ada, supra, 182 F.2d 296; and see St. Louis-San Francisco Railway Company v. Walter, 10 Cir., 305 F.2d 90. Thereby an intent to abandon, albeit an involuntary intent, was manifested. But, we agree that the Woodville case controls and that as a matter of law there was no abandonment.

In Woodville a dam project was proposed which would flood the town including certain railroad right-of-way acquired under the Act of 1902. The United States negotiated an agreement with the railroad under which it conveyed all its interest in the right-of-way to the government. The United States then sued the town to condemn the reversionary interest which accrued to the town under the Act of 1906, see footnote 2, supra. The court held that continued use for railroad purposes was made impossible by operation of law, and that regardless of whether the railroad's estate was a base fee or a fee determinable upon condition subsequent, compliance with the condition of continued railroad use was excused and no forfeiture resulted. The Woodville court viewed the case as if the government had brought a single condemnation suit against both the railroad and the town, and held that in such a proceeding the town as owner of the right-of-entry or possibility of reverter would be entitled only to nominal damages on the theory that such interests were not possessory and too uncertain to admit of compensation, therefore, not property in the constitutional sense. The town was awarded only nominal damages.

■ Here the railroad was also ousted from its right-of-way as the result of pre-condemnation negotiations. To be sure, the railroad in Woodville was thought to own a defeasible fee interest and here an easement, but the condition of continued existence of both interests is the same—continued use for railroad purposes. So long as so used, the interests are perpetual and for the purposes of this case the exact legal characterization of the interest is immaterial. There was no voluntary intent to abandon, and, therefore, no abandonment as a matter of law so as to terminate the easement. See State v. Cooper, 24 N.J. 261, 131 A.2d 756; Romero v. Dept. of Public Works, 17 Cal.2d 189, 109 P.2d 662; People ex rel. Department of Public Works v. City of Fresno, 210 Cal.App.2d 500, 26 Cal. Rptr. 853; State by Mondale v. Independent School District No. 31, 266 Minn. 85, 123 N.W.2d 121, and cases cited therein in footnote 2. Nor does Oklahoma City v. Local Federal Savings and Loan Ass'n, 192 Okl. 188, 134 P.2d 565, militate

against application of the Woodville rule. There the railroad also conveyed a defeasible fee to the city as a result of pre-condemnation negotiations. The court held that upon cessation of use for railroad purposes the right to enter accrued because the proposed condemnation was not authorized by statute. Here no contention is made that the proposed condemnation was unauthorized. Cf. also City of Dallas v. Leake, Tex.Civ.App., 300 S.W.2d 135. Midwestern cites no case contrary to Woodville, and makes no attempt to distinguish it.

■■ What we have said with respect to abandonment is interrelated to the matter of the allowance of compensation to Midwestern for what was taken by the city for right-of-way purposes. While this is not a condemnation suit against the owner of the residual interest as in Woodville, the expressway has been built, and if thereby Midwestern's property was taken, it can recover in this reverse condemnation action. See Oklahoma City v. Wells, 185 Okl. 369, 91 P.2d 1077, 123 A.L.R. 662. Following Woodville, we view the reverse condemnation action as if the city condemned a highway right-of-way along the railroad easement and made the railroad and servient owner codefendants. Any such condemnation would undoubtedly terminate the railroad easement simultaneously with the taking of the highway right-of-way. See Restatement of Property, § 507, Comment c; City of Dallas v. Leake, supra. The question is how a condemnation award in such a case should be apportioned as between the railroad and the servient owner.

■■ The general rule applicable to condemnation of land held in defeasible fee simple is that the entire award is apportionable to the fee owner and the holder of the right of entry or possibility of reverter is entitled to nominal damages only. See Woodville, supra; State v. Cooper, supra; Romero v. Dept. of Public Works, supra; State v. Independent School District No. 31, supra; People v. City of Fresno, supra; People

of Puerto Rico v. United States, 1 Cir., 132 F.2d 220; and see Oklahoma City v. Local Federal Savings and Loan Assn., supra; Anno., Condemnation Award-Right of Reverter, 81 A.L.R.2d 568, § 2. This is so at least where there is no indication that the future interest will imminently become possessory as a result of voluntary acts, cf. Chew v. Commonwealth, 400 Pa. 307, 161 A.2d 621, 81 A. L.R.2d 562; Restatement of the Law of Property, § 53(b) (c); Anno., Condemnation Award-Right of Reverter, supra, § 3, or where there are no special circumstances entitling the holder of the future interest to more than nominal damages, see State v. Independent School District No. 31, supra; Romero v. Dept. of Public Works, supra. Similarly, as between servient and easement owners, as in our case, the easement owner is entitled to the entire award, both where the condemnor takes an easement, see City of San Gabriel v. Pacific Electric Railway Co., 129 Cal.App. 460, 18 P.2d 996, and where the condemnor takes the fee, see United States v. Certain Land in County of Cook, State of Minnesota, D.C., 248 F. Supp. 681; State ex rel. State Highway Comm. v. Myers, 72 N.M. 319, 383 P.2d 274; City of Los Angeles v. Fiske, 117 Cal.App.2d 167, 255 P.2d 445. But again, if voluntary abandonment of the easement is imminent, or if special circumstances exist, the owner of the servient estate may be entitled to more than nominal damages. And see City of Los Angeles v. Fiske, supra.

The condemnation of a fee containing valuable minerals has been cited as a special circumstance entitling the servient owner to more than nominal damages, i. e. see Romero v. Dept. of Public Works, supra. The fact that the city acquired only the surface rights for highway purposes indicates that it meant to take only an easement for highway purposes here. However, we need not decide what interest, if any, the city has taken from the servient owner, for Midwestern must first prove its title to the servient estate before it is entitled to any compensation. The judgment is accordingly affirmed

without prejudice to Midwestern to (1) prove its title to the servient estate and, if successful, (2) prove special circumstances entitling it to more than nominal damages.