MIDWESTERN DEVELOPMENTS,
INCORPORATED, Plaintiff,

v.

The CITY OF TULSA, OKLAHOMA, a
municipal corporation, Defendant.

Civ. No. 5478.

United States District Court
N. D. Oklahoma.

July 18, 1966.

Farmer, Woolsey, Flippo & Bailey,
Tulsa, Okl., for plaintiff.

John Robert Seelye, Asst. City Atty.,
Tulsa, Okl., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BARROW, Chief Judge.

The Court makes and enters the following findings of fact and conclusions of law:

## FINDINGS OF FACT

### I

The plaintiff brings this action under 28 U.S.C.A. Section 1331(a).

### II

The Missouri, Kansas & Oklahoma Railroad Company, predecessor of the Missouri-Kansas-Texas Railroad Company, was a corporation organized and existing under the Laws of the Territory of Oklahoma, for the purpose of surveying, locating, constructing, operating and maintaining lines of railroad into and through portions of Oklahoma and Indian Territories, including the line of railroad across the land in controversy in this case. Pursuant to and in accordance with the terms and provisions of the Act of Congress of March 2, 1899, and the Regulations promulgated thereunder on April 18, 1899, said railroad corporation duly filed with the Secretary of the Interior on January 9, 1902, its application for permission to survey, locate, construct, operate and maintain its lines of railroad through and across portions of said Territories, with date and evidence accompanying the same, as required by said Regulations, and in full compliance therewith. The Secretary of the Interior, by letter of January 14, 1902, to the Commissioner of Indian Affairs, found and stated that he was satisfied that the Railroad Company had made its application in good faith and approved the application, and granted the railroad permission to so survey, locate, construct, operate and maintain its lines of railroad under the Act of Congress of March 2, 1899.

### III

That thereafter the railroad company proceeded to and did survey and locate the route of its lines of railroad through and across lands in said territories, including the lands in controversy herein; that maps of said survey of the lines or routes of the railroad were filed with and approved by the Secretary of the Interior, and the approval was endorsed by him upon the maps, reciting that it was subject to the provisions of the Act of Congress of March 2, 1899, 30 St.L. 990, and the Secretary signed the endorsement showing approval as of August 15, 1902.

### IV

That the railroad commenced construction of its lines of road in 1902, and that its "Wybark Branch", extending from the Town of Osage across Section 22, Township 19 North, Range 13 East, Tulsa County, Oklahoma, to Wybark, Oklahoma, a distance of approximately 80 miles, was completed during the year 1904.

### V

The lands in controversy were allotted to Clydie Landrum, a female Creek Freedman, Roll No. 4157, who was eleven years of age at the date of her enrollment in September, 1898. The land was deeded by the Muskogee Creek Nation to Clydie Landrum in two conveyances—a homestead deed dated November 18, 1902, and an allotment deed, also dated November 18, 1902. The homestead deed conveyed the Northwest Quarter of the Northwest Quarter of Section 22, Township 19 North, Range 13 East, and the allotment deed conveyed the East Half of the Northwest Quarter and the Southwest Quarter of the Northwest Quarter of Section 22, Township 19 North, Range 13 East, all in Indian Territory.

### VI

On September 10, 1902, an instrument entitled "Right-of-way Deed" was executed by Laura Eubanks, as mother and natural guardian of Clydie Landrum, a minor, to the Missouri, Kansas & Oklahoma Railroad Company, which deed pur-

ported to convey a fee simple title. The granting clause provided:

"* * * do hereby give, grant, bargain, sell and convey unto the Missouri, Kansas and Oklahoma Railroad Company, a corporation, created and existing under and by virtue of the laws of the Territory of Oklahoma, party of the second part, its successors and assigns, the following tract or parcel of land, real property and premises, situated in the Creek Nation, Western Judicial District of the Indian Territory, that is to say:

"A strip, belt or piece of land One Hundred and fifty (150) feet in width, comprising all that portion of the Northwest Quarter (NW/4) of Section number Twenty-two (22) in Township number Nineteen (19) North of Range number Thirteen (13) East, extending from the East line of said 160 acre tract Northwesterly from Station No. 2173 + 43 a distance of 2493 feet to the North line of said quarter section at Station No. 2198 + 36, the same being seventy five feet on each side of the center line of said Company's railroad as the same is now located and surveyed over and across the above described subdivision of land * * *."

and which further provided in the habendum clause:

"To have and to hold the premises hereby conveyed, with all the rights, privileges and appurtenances thereunto belonging or in anywise appertaining unto the said Missouri, Kansas & Oklahoma Railroad Company, party of the second part, its successors and assigns, *in fee simple forever* * * *.

"This deed is made by the party of the first part over the allotment of the said Clydie Landrum, the Certificate Number which is Number 2388, under authority of the provisions of the Act of Congress of March 2, 1899, and is intended to convey all such right as said party of the first part may lawfully convey to said party of the second part under the provisions of said Act of Congress and the laws of the United States, * * *."

## VII

That all right, title and interest of the Missouri, Kansas and Oklahoma Railroad Company in and to its rights of way and premises were acquired by the Missouri, Kansas & Texas Railway Company, a Kansas Corporation, by deed on June 30, 1904. That the Missouri-Kansas-Texas Railroad Company acquired all right, title and interest of the said Missouri, Kansas & Texas Railway Company in and to the right of way and premises by deed dated March 14, 1923, pursuant to sale under Receivership proceedings in the United States District Court for the Eastern Division of the Eastern Judicial District of the State of Missouri, In No. 4564 Equity.

## VIII

That the railroad companies were in continuous, peaceable, open, notorious and hostile possession of the sixty foot strip of land in controversy from 1902 until 1955.

## IX

On September 27, 1955, the City of Tulsa and the Missouri-Kansas-Texas Railroad Company entered into an agreement by which the railroad company agreed to convey to the City of Tulsa for the construction of a freeway the surface right only in all lands embraced in the railroad's right of way between 13th Street and Sheridan Avenue to the City of Tulsa, Oklahoma, for highway purposes only. The contract and conveyance included the 60 foot strip of land in controversy, which strip was a part of the land originally allotted to Clydie Landrum and deeded by her mother to the railroad company.

## X

The City of Tulsa negotiated in good faith with the railroad to acquire the strip of land in question, preparatory to filing a condemnation suit to acquire the subject property, and as a result of such negotiation, the contract dated Septem-

ber 27, 1955, was entered into between the railroad and the City in lieu of such condemnation proceedings.

### XI

By mesne conveyances, the title to the Northwest Quarter of Section 22, Township 19 North, Range 13 East, less the right of way of Missouri, Kansas & Texas Railway Company became vested in Evalyn M. English. On February 27, 1957, Evalyn Bresser, formerly Evalyn M. English, and her husband, by warranty deed, conveyed to the plaintiff, Midwestern Developments, Inc. the following described land, to-wit:

"A triangular tract of land containing approximately 23½ acres in the Northwest Quarter of Section 22, Township 19 North, Range 13 East, being more particularly described as being all of the land in the Northwest Quarter of Section 22, lying North of the Missouri, Kansas & Texas right of way and South of 31st Street."

On August 8, 1960, Evalyn Bresser, formerly Evalyn M. English, and her husband, executed a Quit Claim Deed to the plaintiff conveying the following described land:

"A triangular tract of land containing approximately 23½ acres in the Northwest quarter of Section 22, Township 19 North, Range 13 East, being more particularly described as being all of the land in the Northwest Quarter of Section 22 lying North of the Missouri, Kansas & Texas Railroad and subject to a right of way of the Missouri-Kansas & Texas Railroad, and lying South of 31st Street, subject to mortgages and encumbrances of record."

### XII

That a portion of the Broken Arrow expressway was constructed on the right of way acquired by the City of Tulsa from the Missouri-Kansas-Texas Railroad Company. The expressway is a limited access facility running generally from the Town of Broken Arrow, Oklahoma, to the City of Tulsa, Oklahoma, a distance of approximately 15 miles.

It is constructed so that the north bound lanes of traffic parallel the South side of the railroad. The total width of the railroad property is 150 feet, with the railroad occupying the center 30 feet and the expressway occupying the North 60 feet and the South 60 feet thereof. The railroad continues to operate and to furnish rail service and has done so uninterruptedly since it commenced railroad operations on this line. Numerous customers and shippers are located along and are served by the railroad's line and there are two spur tracks from this line to shippers which cross the Broken Arrow Expressway at grade level near the location of the property in question, the closest being three-tenths of a mile away. The railroad company is using the strip of land in question as much today as it ever did. The use of the strip by the City of Tulsa as a limited access highway is compatible with the railroad use and does not interfere with the operation of the railroad's trains, but, in fact, is consistent with and actually advantageous to such use. In this connection, attention is called to the fact that the Oklahoma Constitution provides that a railroad right of way is a "public highway".

### CONCLUSIONS OF LAW

#### I

The Court has jurisdiction of the parties to the suit and of the subject matter. Midwestern Developments, Inc. v. The City of Tulsa, 10 Cir., 333 F.2d 1009.

#### II

█ A railroad grant does not become effective until the maps of definite location are filed and approved. Southern Pacific Railroad Company v. United States, 183 U.S. 519, 22 S.Ct. 154, 46 L.Ed. 307; St. Louis & San Francisco Railway Company v. Walters, 10 Cir., 305 F.2d 90. Therefore, the grant approved by the Secretary of Interior to the Missouri, Kansas & Oklahoma Railroad Company was necessarily an imperfect one until the maps were filed and

approved on August 15, 1902, but when the maps were approved the rights of the railroad company attached and took effect as of the date of the original grant, which was January 14, 1902. Wisconsin Central R. R. Company v. Price County, 133 U.S. 496, 10 S.Ct. 341, 33 L.Ed. 687; St. Louis & San Francisco Railway Company v. Walters, supra; Railroad Company v. Baldwin, 103 U.S. 426, 429, 26 L.Ed. 578. I conclude, therefore, that the right of way in controversy was acquired by the Missouri, Kansas & Texas Railroad Company under the Act of March 2, 1899, 30 St.L. 990, and not the Act of February 28, 1902, 32 St.L. 43, as contended by the plaintiff.

### III

█ The lands involved were restricted against alienation at the time the right of way deed was executed and could not be conveyed in fee simple, unless the Act of 1899 clearly and expressly authorized the acquisition of a fee simple title for railroad purposes, which the Act did not do. Under the provisions of the 1899 Act, the railroad company only had authority to acquire an easement. Great Northern Railroad Company v. United States, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836; United States v. Union Pacific R. Co., 353 U.S. 112, 77 S.Ct. 685, 1 L.Ed.2d 693; Gutensohn v. McGuirt, 194 Okl. 64, 147 P.2d 777. Therefore, since the right of way deed provided that it was intended that the deed should convey all such right as the grantor might lawfully convey, and since the Court of Appeals for this circuit in construing similar grants, has consistently held that such grants convey an easement, the Court concludes that the right of way deed from Laura Eubanks, mother and natural guardian of Clydie Landrum, a minor Creek Freedman, conveyed as easement. St. Louis S & F Railroad Company v. Town of Francis, 10 Cir., 249 F.2d 546; United States v. Magnolia Petroleum Company, 10 Cir., 110 F.2d 212; St. Louis & San Francisco Railway Company v. Walters, supra.

### IV

█ The question of whether a right of way has been abandoned is largely a question of intent. The fact that the contract and deed executed by the railroad company to the City of Tulsa purports to convey the surface only of the land involved, reserving the remaining interest in the right of way, is consistent with its claim that it owned the entire fee simple title to the right of way and negates any intent on its part to abandon the same.

██ The law abhors forfeitures and favors the duration of railroad rights of way, as long as they continue to be compatible with railroad use, and the courts, in difficult cases, have been inclined to resolve the doubt against abandonment. 44 Am.Jur., Railroads, Section 105.

The Court has given considerable weight to the fact that the City of Tulsa could have acquired the tract by eminent domain, and that before bringing a condemnation suit, it was required, by law, to negotiate in good faith in an effort to acquire the property without the necessity of filing a condemnation action. Koch v. Oklahoma Turnpike Authority, 208 Okl. 556, 257 P.2d 790; Delefeld v. City of Tulsa, 191 Okl. 541, 131 P.2d 754, 143 A.L.R. 1032. The parties' negotiations resulted in the contract of September 27, 1955, which obviated the necessity of filing a condemnation action. If the City had condemned the right of way in question, there would have been no abandonment on the part of the railroad and no forfeiture of the estate would have resulted. Woodville, Okl. v. United States., 10 Cir., 152 F.2d 735.

█ For the above reasons, the Court concludes there has been no abandonment of the land in controversy so as to cause a reversion of the title thereto to the abutting property owner.

### V

The defendant, City of Tulsa, is entitled to recover judgment, together with its costs herein expended.