WILLIAM V. WOODWARD ET AL V. ISIDORO ORTIZ ET AL.

No. A-2814. Decided February 7, 1951.
Rehearing overruled March 7, 1951.
(237 S. W., 2d Series, 286.)

*L. J. Polk,* of Pharr, *Henrichson & Rawlings* and *E. G. Henrichson,* all of Edinburg, for petitioners.

The Court of Civil Appeals erred in holding as a matter of

law that the evidence was insufficient to support the trial court's finding that the attorney filing the tax suit had notice of petitioner's interest in the land. Guevara v. Guevara, 280 S. W. 736; Texter v. Pratt, 10 S. W. 2d 692; Flack v. First National Bank of Dalhart, 148 Texas 495, 226 S. W. 2d 628.

*A. G. Haigh, Kelley, Looney, McLean & Littleton, Jackson Littleton* and *Victor Rochelle,* all of Edinburg, and *Frank G. Dyer,* of Houston, for respondents.

The Court of Civil Appeals correctly held that the evidence was insufficient to support the trial court's finding that the attorney filing the tax suit had notice of petitioner's interest. Griggs v. Montgomery, 22 S. W. 2d 688; Parks v. Willard, 1 Texas 350; Dean v. Birdville Ind. Sch. Dist. 138 Texas 339, 159 S. W. 2d 111.

MR. JUSTICE CALVERT, delivered the opinion of the Court.

This is a suit in trespass to try title involving a tract of land in Hidalgo County. Petitioners, who are heirs of N. L. Woodward, deceased, were plaintiffs in the trial court. Respondents here and defendants in the trial court are Isidoro Ortiz who claims title to the land, George S. Anderson to whom Ortiz executed an oil and gas mineral lease on the premises and Wallace Sanders and Frank G. Dyer, trustees, to whom the mineral lease was assigned. The parties will be referred to in this opinion as plaintiffs and defendants.

It was agreed that Miss C. M. Flinn was the common source of title. As proof of their title plaintiffs offered in evidence a number of deeds showing a regular chain of title from Miss C. M. Flinn to Borderland Orchards Company, a corporation, and a judgment, regular on its face, for title and possession in their favor against Borderland Orchards Company and certain other defendants unnecessary to name. This judgment was rendered by the 92nd District Court of Hidalgo County on the 19th day of December, 1938, was filed in the office of the District Clerk and entered in the Civil Minutes of the Court on December 22, 1938, but was not filed and recorded in the office of the County Clerk until January 12, 1949.

To defeat the plaintiffs' title thus established defendants offered in evidence a judgment of the 93rd District Court in a delinquent tax suit in which The State of Texas suing for itself and Hidalgo County recovered judgment on September 25, 1944, against Borderland Orchards Company, one Irwin Knaps and

certain other taxing units foreclosing its lien for delinquent taxes. They also offered in evidence the order of sale on such judgment, a sheriffs deed to Hidalgo County dated December 5, 1944, a deed from Hidalgo County to defendant Ortiz dated June 19, 1945, the mineral lease from Ortiz to defendant Anderson dated November 1, 1948, and the assignment of such lease from Anderson to defendants Sanders and Dyer on the same date. Plaintiffs were not made parties to the tax suit and it was stipulated that they had no actual notice of that proceeding or of the judgment entered therein until October 20, 1948. The regularity of the proceedings in the tax suit is not otherwise challenged.

Evidence was offered by plaintiffs to show that the attorney filing the delinquent tax suit either had or was charged in law with notice of the judgment of December, 1938, awarding them title to the land. Based on this evidence they contend that their title was not affected by the judgment in the tax suit. This evidence will be noticed in some detail later.

■ The trial court rendered judgment for plaintiffs and in response to a request therefor filed findings of facts and conclusions of law in which it was found that the attorney filing the delinquent tax suit had both actual and constructive notice of plaintiffs' interest in the property at the time the judgment was entered in the tax suit and that plaintiffs' interest was therefore not affected by such judgment. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment that plaintiffs take nothing on the ground that the evidence was "insufficient as a matter of law" to support the judgment. 231 S.W. 2d 503. This holding of the Court of Civil Appeals is assigned as error by petitioners. The question presented is one of law which this Court has jurisdiction to review. Jackson v. Watson et al, 10 S.W. 2d 977, 982 (Com. App.).

The record reflects that Hollis H. Rankin, Jr., was employed as delinquent tax attorney for Hidalgo County on June 1, 1942, and that he continued in that employment until October 1, 1945. In his capacity as such attorney he filed and prosecuted the tax suit heretofore mentioned. The record reflects also that W. F. Tinkler, owner of the Hidalgo County-Starr County Abstract Company, was employed by Hidalgo County to furnish Mr. Rankin with title information necessary to the filing of tax suits. Mr. Tinkler in turn employed Hubert G. Ferguson, an Edinburg attorney, to do the actual work of running the index cards in the abstract office and of securing the informa-

tion to be furnished to Mr. Rankin. It was the practice of Mr. Ferguson to furnish Mr. Rankin with a "run sheet", a sheet of paper containing the names of the owners of the property involved, the lien holders thereon, etc. The "run sheet" furnished in connection with the suit in question was found in the file of the delinquent tax attorney and it showed the name of the owner of the property to be Borderland Orchards Company and contained no information with reference to the Woodward judgment. It was the view of the Court of Civil Appeals that the absence of information concerning the Woodward judgment on this sheet conclusively negatived the existence of actual notice of the judgment on the part of the tax attorney and the county. There is no evidence that any other information with reference to the judgment was furnished the tax attorney by Ferguson or anyone else.

■■ If, in holding that the evidence was conclusive that the tax attorney had no notice of the Woodward judgment, the Court of Civil Appeals meant that the attorney had no *express knowledge* thereof, we would be constrained to agree. It may be agreed also that the attorney did not have *constructive notice* —as that term is generally used and understood—of the judgment, for the judgment had not been recorded in the office of the County Clerk and the law did not charge him with notice of a judgment of record only in the Civil Minutes of the District Court. Arts. 6627 and 6638; V.A.S.; Ball v. Norton, 238 S.W. 889 (Com. App.); Permian Oil Co. v. Smith, 129 Texas 413, 73 S.W. 2d 490, 504, 107 S.W. 2d 564, 111 A. L. R. 1152. It may well be, however, that the tax attorney and the County were charged with *actual notice* of the judgment even though they had no *express knowledge* thereof. *Actual notice* "embraces those things of which the one sought to be charged has express information, and likewise those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed." Hexter et al v. Pratt et al, 10 S.W. 2d 692 (Com. App.); Flack et al v. First National Bank of Dalhart, 148 Texas 495, 226 S.W. 2d 628.

■ We now examine the record to determine whether there was any evidence of probative value to support the fact finding of the trial judge. If there was, the Court of Civil Appeals was without authority to reverse the judgment of the trial court and render a take nothing judgment against plaintiffs on the ground that the evidence "was insufficient as a matter of law" to support the fact finding. Liedeker et al v. Grossman et al, 146 Texas 308, 206 S. W. 2d 232; 3-B Tex. Jur. 457, sec. 941.

In determining this question we must view the evidence in the light most favorable to plaintiffs, rejecting all evidence favorable to defendants. Cartwright et al v. Canode, 106 Texas 502, 171 S.W. 696.

Tinkler testified that abstracts were made up from the records as reflected by index cards kept in the abstract office; that he made index cards on all suits filed affecting the title to land; that certain notations on the index card to be mentioned later were in the handwriting of his daughter.

Ferguson testified that he was employed by Tinkler "to procure title information in reference to ownerships and parties of interest" to lands involved and that "the work consisted of showing the record owner and parties of interest, such as deeds of trust, mechanic's liens, *judgments,* mineral oil and gas interests, and other interests that might or would affect the title to the lands". The witness had no independent recollection of the index card now to be described but did identify certain information contained on the back of the card as being in his handwriting.

An index card identified as having come from the files of the Hidalgo County-Starr County Abstract Company was introduced in evidence. The information thereon identified by the witness Tinkler as being in the handwriting of his daughter indicated that an Original Petition was filed on September 11, 1935, in Cause No. A-2657 styled Wm. V. Woodward et al v. Wm. Belden (one of the defendants in that suit) for foreclosure on the east 10 acres and the west 10 acres of the east one half of Lot 7, Block 274 of the Tex-Mex Subdivision (a short description of the land here involved). On the front of this card also was a typewritten notation as follows: "Judgment for title and possession in favor of plaintiffs Dec. 19, 1938, Vol. 6 Page 52". On the reverse side of the card and identified by Ferguson as being in his handwriting was the following notation: "Title & Poss to Wm. V. Woodward, and Mrs. May V. B. Woodward a widow; Mrs. Eunice Woodward Armstrong et vir, Donald A. Armstrong against G. E. Lankford, John Gardarl, Borderland Orchards Co., L. J. Simpson Jud. 19 Dec. 1938".

■ Rankin, Tinkler and Ferguson were all engaged in working for Hidalgo County in its effort to collect delinquent taxes through suits. All were agents of the County. Tinkler and Ferguson were charged with the duty of furnishing to the County, through Rankin, full information of all outstanding

interests in the land. That was the purpose for which they were employed and paid. If they or either of them had actual notice of the Woodward judgment, Hidalgo County as their principal and Rankin as the County's attorney were charged with notice thereof even though the information concerning the existence of the judgment was not in fact communicated to the County or Rankin. Hexter et al v. Pratt et al, supra; St. Paul Fire & Marine Ins. Co. v. Stogner et al, 44 Texas Civ. App. 60, 98 S. W. 218, writ denied; 2 Tex. Jur. 563, sec. 158.

The question narrows itself down to this: Was it unreasonable for the trial judge to infer and conclude from the facts and circumstances in evidence that Ferguson or Tinkler, prior to the filing of the tax suit and the entry of judgment therein, knew of the existence of the Woodward judgment or knew of the existence of facts calculated to excite further inquiry, which inquiry, if reasonably pursued, would have led to knowledge of the judgment? If such an inference was not unreasonable then it must be held that there was some evidence in support of the finding of fact.

■ The notation made by Ferguson on the index card clearly shows that he had express knowledge of the Woodward suit and judgment. The typewritten notation on the card shows that a judgment for title and possession to the land had been entered in favor of the Woodwards in December, 1938. The notation made by Tinkler's daughter on the card shows that suit involving the title to the land had been filed by the Woodwards on September 11, 1935. But it is said by defendants that there is no evidence showing when these notations were made and that plaintiffs have failed to discharge their burden of showing their existence before the tax suit was filed and the judgment therein entered. As has been said, the trial judge had the right to consider all facts and circumstances in evidence and to indulge reasonable inferences therefrom in reaching his ultimate finding. The evidence is that Ferguson was investigating the index cards to get information concerning the existence of judgments (as well as other title information) as a basis for the filing of tax suits. There is no evidence that he ever dealt with these cards for any other purpose or at any other time. It cannot, therefore, he said that it was unreasonable for the trial court to infer and conclude that Ferguson discovered the existence of the judgment and made the notation while in the course of that investigation. The notation made by Ferguson is but a detailed explanation of the typewritten notation showing the existence of the judgment. The Woodward judgment was entered in De-

cember 1938. The tax suit was not filed until March 27, 1943, and judgment was not entered therein until September 25, 1944. There was a span of over four years between the entry of the Woodward judgment and the filing of the tax suit and a span of nearly six years between the entry of the Woodward judgment and the entry of judgment in the tax suit. It was not unreasonable for trial court to infer that an abstract company engaged in keeping a record of all suits in the District Court affecting the title to land had made the typewritten notation of this judgment prior to the filing of the tax suit. The testimony of the witness Tinkler is that his company made a card record of all suits *filed* affecting the title to land. This testimony is corroborated in this case by the notation made by Tinkler's daughter which showed only the date of the filing of plaintiffs' petition. It was not unreasonable for the trial court to infer that the notation made by the daughter was made before December 19, 1938, and therefore long before the tax suit was filed in March, 1943, otherwise there is no reason why the daughter did not also note the judgment entered. The notation showing that the suit had been filed was sufficient to put Ferguson and Tinkler on inquiry to determine what had been the result of the suit. Even the slightest inquiry would have led to discovery of the judgment.

While the County and its tax attorney could have relied on the records in the office of the County Clerk and thereby have been absolved of notice of the Woodward judgment, having chosen instead to employ Tinkler and Ferguson to make the search from the abstract company records for title information the County must suffer the consequence of being charged with notice of such information as came to their knowledge or that should have come to them through a diligent investigation. We conclude that there was some evidence to support the trial court's finding of fact.

■ The land involved was bought in at the tax sale by Hidalgo County as trustee for itself and other taxing units. The sheriffs deed conveyed to the County "all the right, title and interest of said Hidalgo County Water Control and Improvement District Number One, a Municipal Corporation; Irwin Knaps; Borderland Orchards Company, a defunct corporation" had in and to the lands at the date of the judgment or after the accrual of the taxes. The deed contained no covenant of warranty. Having purchased the land with notice of the Woodward judgment the County did not acquire the plaintiffs' interest in the property. American Realty Corporation v. Tinkler, 107 S. W. 2d 627,

Civ. App. writ refused; State Mortgage Corporation v. Traylor, 120 Texas 148, 36 S. W. 2d 440. The defendant Ortiz contends, however, that he had no notice of the Woodward judgment and that he should be protected as an innocent purchaser. The deed to Ortiz executed by the County Judge, the County Commissioners and the State and County Tax Assessor-Collector recited that these officials "for the State of Texas and County of Hidalgo as trustees for themselves and Hidalgo County Water Control and Improvement District Number One—have bargained, sold and conveyed, and by these presents do bargain, sell and convey unto the said Isidoro Ortiz all the right, title and interest of the above taxing units and of Hidalgo County Water Control and Improvement District Number One, Irwin Knaps, Borderland Orchards Company, in said property which they had at the date of said judgment, together with all and singular the rights, privileges, and appurtenances thereto belonging—". This deed contained no covenant of warranty. The deed to Ortiz does not purport to convey the land; it conveys only such title as the grantors and the other parties named had in the land and is therefore nothing more than a quitclaim deed. 14 Tex. Jur. 763, sec. 13. He cannot enjoy the protection afforded a bona fide purchaser; he takes with notice of all defects in the title and equities of third persons. Simons v. Stanolind Oil & Gas Co., 134 Texas 332, 114 S. W. 2d 226, 234; Cook et al v. Smith, 107 Texas 119, 174 S. W. 1094, 3 ALR 940; Threadgill v. Bikerstaff et al, 87 Texas 520, 29 S. W. 757; 43 Tex. Jur. 624, sec. 370. The attorney for Ortiz testified that he examined the deed under which Ortiz was purchasing the property at the time of the purchase and advised him that he could get whatever title to the land was held by Borderland Orchards Company and Irwin Knaps. He bought only a chance of title.

Neither are the other defendants protected as innocent purchasers. In addition to the fact that they took their mineral lease from a grantor holding only under a quitclaim deed, which in itself would be sufficient to defeat their claim to the status of innocent purchasers, Houston Oil Co. of Texas et al v. Niles et al, 255 S. W. 604, 609 Com. App., one of the defendants, Mr. Sanders, an attorney, testified that he had actual knowledge of the Woodward judgment from an examination of an abstract of title and that he communicated this knowledge to his co-defendants, Anderson and Dyer, before the mineral lease was executed and assigned.

The defendants had before the Court of Civil Appeals one other point of error which, had it been passed on and sustained by that Court, would have resulted in the rendition of a take

nothing judgment. The point was that by reason of having failed to file and record their judgment for so long a period of time thereby leading innocent parties to deal with the land to their detriment, the plaintiffs are estopped to assert their title. The cases cited in support of the proposition are not in point. It is stipulated in this case that plaintiffs had no notice of the tax suit or that the county was selling the land to Ortiz. Neither was Ortiz an innocent purchaser.

■ We come now to the judgment to be entered. The particular point of error sustained by the Court of Civil Appeals in reversing the trial court's judgment in plaintiffs' favor and rendering a t ake nothing judgment against them reads as follows: "The District Court erred in its finding that the attorney for the taxing agency had notice of any interest claimed by the plaintiffs, such finding not having sufficient support in the record." Under our liberal briefing rules we have treated this point of error, as did the Court of Civil Appeals, as though it was sufficient to raise the question of "no evidence". However lacking it may be in that respect it is clearly sufficient to raise the question that the finding under attack was so contrary to the great weight and preponderance of the evidence as to be clearly wrong. With this question before it we must assume that had the Court of Civil Appeals considered the question it would have sustained the point of error and that it would have reversed the judgment of the trial court and remanded the cause for retrial. Chapman v. Kellogg, 252 S.W. 151, Com. App.; Liberty Film Lines Inc. v. Porter, et ux, 136 Texas 49, 146 S.W. 2d 982. We have no jurisdiction to disturb the judgment of the Court of Civil Appeals on this question. Childre et ux Casstevens, 148 Tex. 297, 224 S.W. 2d 461; 3 Tex. Jur. 1088, sec. 764.

The defendants call to our attention other points of error which they urged before the Court of Civil Appeals but they admit here that to sustain the same could result only in a reversal of the trial court's judgment and a remand of the cause for retrial. This result has been accomplished by our holding on the matter discussed and it becomes unnecessary, therefore, to discuss such other points.

The judgment of the Court of Civil Appeals in so far as it renders a take nothing judgment against plaintiffs is reversed and the judgment of reversal is left undisturbed.

Justice Wilson not participating.

Opinion delivered February 7, 1951.

ON REHEARING.

MR. JUSTICE CALVERT delivered the opinion of the Court.

In his motion for rehearing defendant Ortiz calls our attention to the fact that the deed under which he claims title was executed by the officials of Hidalgo County pursuant to the provisions of Art. 7345b, sec. 9, V.A.S. He contends that his status should not be determined by the general rules governing the status of purchasers under quitclaim deeds but should be determined with particular reference to the provisions of that article.

Section 9 of Art. 7345b provides that if property sold under foreclosure of a tax lien "be sold to any taxing unit which is a party to the judgment * * * the taxing unit may sell and convey the property so purchased by it * * * *and the purchaser of the property at any such sale shall receive all of the right, title and interest in said property as was acquired and is then held by said taxing unit * * *.*" It also provides: "Any taxing unit * * * making any sale under provisions hereof shall execute and deliver to the purchaser at such sale *a deed of conveyance, conveying all right, title and interest of all the taxing units interested in the tax foreclosure judgment in and to the property so sold* * * *.*"

■ The language of the deed to Ortiz is substantially in keeping with the wording of the statute. This does not make it operate to convey the land. The deed plainly purports to convey only such interest as the taxing units had in the land. Such deeds are construed by our courts to be mere quitclaims. To cite a few cases in which deeds of similar wording were held to be quitclaims, see Hill v. Foster et al., 181 S.W. 2d 299; affirmed, 143 Texas 482, 186 S.W. 2d 343; Houston Oil Co. et al v. Niles et al., 255 S.W. 604 (Com. App.) Hunter et al v. Eastham et al., 95 Texas 648, 69 S.W. 66. Article 7345b was enacted by the legislature with full knowledge of the construction our courts have given such deeds. It must be presumed that the legislature acted in the light of that knowledge and knew the legal effect of the language it used in directing the type and form of deed to be executed by taxing units. Koy v. Schneider, 110 Texas 369, 221 S.W. 880, 886; 39 Tex. Jur. 248, sec. 132.

Surely the legislature had the power to direct that taxing units—political subdivisions of the state—should bind themselves to a purchaser no further than to convey to him only such

interest in property as they might acquire as purchasers at a foreclosure sale. Indeed, it may well have regarded any other direction as most unwise. The fact that the deed to Ortiz was in the form prescribed by the statute did not place him in any better or more favorable position than any other purchaser under a quitclaim deed. He cannot be regarded in law as an innocent purchaser.

We have considered all the grounds for a rehearing urged by Ortiz in his motion, as well also as those urged by the other defendants in their separate motion. Both motions are overruled.

Opinion delivered March 7, 1951.

Second motion for rehearing overruled April 4, 1951.