**NAVARRO SEED CO., Inc., Appellant,**

v.

**Harold ARANT et al., Appellees.**

No. 7794.

Court of Civil Appeals of Texas.

Amarillo.

March 25, 1968.

Moore & Holland, Athens, Key, Carr, Carr & Clark Lubbock, for appellant; Donald M. Hunt, Lubbock, of counsel.

Nelson, McCleskey & Harriger, Lubbock, for appellees; R. Rex Aycock, Lubbock, of counsel.

CHAPMAN, Justice.

This is an appeal from a judgment in a case involving fact findings tried to the court on a contract case.

Harold Arant and Don W. Slaughter, grain growers, sued Navarro Seed Co., Inc. for damages sustained by them resulting from failure of the company to purchase

the certified milo seed identified in the record as Lot 903. Such lot represented only one of several lots of seed grown by appellees for Navarro under a seed dealers-grain growers contract. The others are not involved in the suit.

Among the conditions of the written contract was a sentence stating: "Any grain testing below 75% [1] shall remain the property of the GROWERS unless otherwise agreed upon between the parties." Whether Lot 903 tested the minimum requirements under the contract constitutes what we believe to be the principle controversy on this appeal. Paragraph 4 of the contract provides the seed should test 85% germination determined by a recognized seed laboratory. The court found as a matter of law that such 85% requirement was a general contract provision and being in conflict with the specific provisions of Paragraph 8 providing a sliding scale of $3.45 per cwt. on a minimum of 75% germination to $4.20 per cwt. on a minimum of 85% germination, the general must yield to the specific. No issue is made on appeal concerning that question.

Navarro's first six points are devoted to the contention that the court committed reversible error in finding Lot 903 tested 76% germination, in considering inadmissible evidence in making that determination, and that in finding 76% germination the court made a mathematical error by computing and analyzing the test results of an unrecognized laboratory.

■■■ The trial court at the request of appellant made findings of fact and conclusions of law. It is the established law of this state that an appellate court in determining whether the trial court's findings are supported by any evidence of probative value will give credence only to the evidence favorable to the findings and disregard all evidence to the contrary. Brown v. Frontier Theatres, Inc., 369 S.W.2d 299 (Tex.1963). "The trial court may draw any

reasonable inference from the evidence and any doubts as to the facts raised by the evidence will be resolved in favor of the judgment." Republic Insurance Co. v. Inverness Estates, 252 S.W.2d 251 (Tex.Civ. App.–Fort Worth, 1952, writ ref'd). We must, therefore, look to the record testimony to find if there was any probative evidence that the seed in Lot 903 tested the minimum germination requirement, as determined by a recognized seed testing laboratory.

If we understand appellant's contention in this respect it is that all the tests made by recognized seed laboratories must be averaged and if they do not result in the exact amount of 76% found by the trial court in its findings of fact then the case must be reversed. We do not believe under the contract this court is so bound. The contract provides for a minimum of 75% germination on the minimum price and that the germination shall be * * * "determined by a [2] recognized seed laboratory", not a group of recognized seed laboratories. We would have to write a different contract by judicial decree to uphold such contention.

Appellant itself sent two samples to Hulsey Seed Laboratories in Decator, Georgia. Mr. Hulsey himself testified. There is no question in the records as to his laboratory being a recognized seed laboratory or to his qualifications for making the tests. They were made by him personally. One of the tests made by him showed 74.5% and one 83.0% on Lot 903 for an average of 78.75% and he testified a tolerance is allowed on tests made at different times.

■■■ In honoring the inferences which must be indulged in favor of the judgment, we hold those tests showed some probative evidence to justify a finding that the germination tests met the minimum standard. If there is any evidence reasonably tending to prove, either directly or by permissive inference, the essential fact, the judgment must be sustained. Benoit v.

---

1. The 75% had reference to germination.

2. All emphases herein are ours.

Wilson, 150 Tex. 273, 239 S.W.2d 792 (1951); Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286 (1951); Clifton v. Koontz, 160 Tex. 82, 325 S.W.2d 684, 79 A.L.R.2d 774 (1959). A discussion of the other facets of appellant's group of six points would only extend this opinion and we believe add nothing thereto.

In its other two points appellant contends the court erred in finding the Lot 903 seeds were of such quality and purety that there would be some demand for such seeds when offered for sale upon the open market and in concluding they are marketable seeds. Both the no evidence and factually insufficient evidence points are raised in the question if we give a liberal construction to the statement in the point that the evidence was insufficient. Appellant admits it has cited no authority for these contentions.

■ In passing upon the factually insufficient evidence we recognize the court's findings may be challenged on the weight and sufficiency of the probative evidence the same as in a jury case. Appellate Procedure of Texas 10–20, Sec. 10.5; Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286 (1951). This being true the same rules would apply as in King's Estate, King v. King, 150 Tex. 662, 244 S.W.2d 660 (1951). We shall discuss the factually insufficient evidence point first.

The court concluded that marketability as used in the contract means seeds for which there would be some demand when offered for sale as seeds on the open market and that they were of such quality and purety that the sale is not prohibited under Art. 93b, Sec. 3(a) (5) (B), Vernon's Ann. Texas Civil Statutes. Such statute allows for a tolerance of 100-seed of Johnson grass per pound. The seeds were placed in the open on the ground exposed to the elements when delivered in November and December and stayed there until February or March. The letter of rejection did not mention Johnson grass seed. A sample was sent to the Texas Department of Agriculture in April, 1966. Even after all the exposure to outside conditions only seven Johnson grass seeds were found out of a package of approximately 9,000-seed. The record shows Mr. Arant used as many as 72 hoe hands in keeping Johnson grass from growing and blooming in the field, that the few seeds found in the sample could have gotten into Lot 903 in a number of ways other than from the plant blooming in the growing seed field, and additionally the court found the appellant waived the presence of Johnson grass seed. It is true the seed did not sell but there is evidence to the effect that there existed a surplus of the particular type of seed in Lot 903 and the market was burdened with it.

There is not any probative evidence to the effect that low germination or Johnson grass seed made Lot 903 unmarketable except some general statements from witnesses that they would not buy milo seed with Johnson grass in them. However, there is also evidence that seed with Johnson grass would be marketable to growers with Johnson grass infestation in their fields.

■ In view of the fact that the germination was found by a recognized seed laboratory to exceed the minimum; that the court found the Johnson grass condition was waived and that there is no point challenging that finding, we do not believe the trial court committed reversible error in finding the seeds were marketable. We accordingly hold the court's finding of marketability was not so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. It follows that there was some probative evidence that the seed in Lot 903 were marketable. The fact that the growers did not sell them at the certified seed prices after they were rejected would not in our opinion show that they were not marketable. They were not dealers anyhow. They were growers, and it is common sense to say that they would not have the same access to the mar-

ket a dealer would have. We fail to see any reversible error in the record despite the able and elaborate preparation and presentation of the defense to the damages sought in rejection of the seed in Lot 903.

The judgment of the trial court is affirmed.