**C.L. CARROLL, Appellant,**

*v.*

**Van Ladon KENNON, et al., Appellees.**

**No. 10-86-093-CV.**

Court of Appeals of Texas,
Waco.

May 14, 1987.

**36**

Reed Jackson, Fairfield, for appellant.

F.B. Harvie, Jr., Novelli & Harvie, Houston, for appellees.

## OPINION

THOMAS, Justice.

Van and Norma Kennon, who owned 31.25 acres as part of their community estate, were divorced on November 28, 1978. The court granting the divorce ordered a receiver to sell the property and use a portion of the proceeds to pay a debt that the Kennons owed to C.L. Carroll. The receiver sold the land on August 29, 1979, to Monte and Kay Hendricks, who paid the Kennons $5,000 cash, assumed the unpaid balance of a $49,700 note that was secured by a first lien on the 31.25 acres, and executed a $16,083.47 note to the Kennons secured by a second lien on the property.

The Kennons assigned the $16,083.47 note to Carroll as collateral to secure a $9,864.17 note which they had given him on August 7 to consolidate several smaller notes. They assigned the note to Carroll under the terms of a "Collateral Transfer of Note (Security Agreement)" which they executed on August 22. Because the $250 monthly payment on the $16,083.47 note from the Hendricks to the Kennons was the same as the monthly payment on the Kennons' $9,864.17 note to Carroll, the parties agreed that the Hendricks would pay $250 a month direct to Carroll which would apply to both notes. The Hendricks were to make the monthly payment to Carroll only until the $9,864.17 note was fully paid, at which time they would make the monthly payment to the Kennons to discharge the remaining balance of the $16,083.47 note.

However, the $9,864.17 note and $16,083.47 note both became delinquent when the Hendricks stopped making the monthly

payment to Carroll as the parties had agreed. Carroll began proceedings to foreclose on the second-lien deed of trust that secured the $16,083.47 note. His attorney posted the foreclosure notice required by the deed of trust, notified the Hendricks of the foreclosure, and mailed foreclosure notices on June 6, 1980, to Van Kennon at Route 2, Buffalo, Texas, and to Norma (Kennon) Morree at 145 Magic Oaks in Spring, Texas.[1] The envelope containing Van Kennon's foreclosure notice was returned undelivered, but Norma's fourteen-year-old daughter received and signed the receipt for her foreclosure notice on June 21. Norma claimed that her daughter never gave her the envelope containing the notice of foreclosure.

Carroll bought the 31.25 acres at the foreclosure sale on July 1, 1980, and then sold the land to the Hogans in July 1981 for $70,000. When the Kennons discovered in 1982 that Carroll had bought the property at the 1980 foreclosure sale and already sold it, they sued him and the attorney who handled the foreclosure. The court originally entered a summary judgment in favor of Carroll and his attorney, but the court of appeals set aside the summary judgment in favor of Carroll. However, no appeal was taken from the summary judgment in favor of Carroll's attorney.

The case was then tried before a jury on the original pleadings. The Kennons alleged in their petition that Carroll had violated the Collateral Transfer of Note agreement when he failed to give them notice of default and foreclosure and when he did not sell the $16,083.47 note at a public sale after giving them notice of the sale. They asserted that he had thereby divested them of their interest in the $16,083.47 note and prevented them from curing the default and foreclosing the second-lien on the 31.25 acres. They sought $32,000 for the loss of the equity in the land, "treble damages" for Carroll's alleged conspiracy and fraudulent acts, and attorney's fees.

The court granted the Kennons an instructed verdict in the second trial and

**1.** Norma, whose married name was Morree at the time of the foreclosure, will continue to be included in references to "the Kennons" for the sake of convenience.

entered a judgment in their favor against Carroll for $6,500, plus $4,578.97 in prejudgment interest from the date of foreclosure and attorney's fees. However, it also instructed a verdict against the Kennons on their claim for punitive damages. Although Carroll appeals from the judgment against him, the Kennons have not appealed from the instructed verdict against them on their claim for exemplary damages.

The Collateral Transfer of Note (Security Agreement), under which the Kennons assigned the $16,083.47 note to Carroll as collateral to secure the $9,864.17 note, provided in part:

> In the event of default in the payment of said indebtedness [$9,864.17 note] when due or declared due, *Secured Party [Carroll] shall have the right to sell the COLLATERAL [$16,083.47 note] at Public Sale* to the highest bidder for cash at the Courthouse door of the County of Secured Party's [Carroll's] address hereinabove stated.... Secured Party [Carroll] shall have the right to purchase at such Public Sale, being the highest bidder therefor.

(Emphasis added). This provision authorized, but did not require, a public sale of the $16,083.47 note. However, the Collateral Transfer of Note agreement also provided that Carroll had, in addition, "all of the rights and remedies of a Secured Party under the Uniform Commercial Code of Texas".

Section 9.504 of the Uniform Commercial Code provides in part:

> (a) A secured party after default may *sell, lease or otherwise dispose of any or all of the collateral* in its then condition or following any commercially reasonable preparation or processing.
>
> \*   \*   \*   \*   \*   \*
>
> (c) Disposition of the collateral may be *by public or private proceedings* ... but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.... The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized

market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

Tex.Bus. & Com.Code Ann. § 9.504(a), (c) (Vernon Supp.1987) (emphasis added). This section gives the secured party the "widest leeway in choosing whatever means of disposition of the collateral he considers most advantageous." *Tanenbaum v. Economics Laboratory, Inc.,* 628 S.W.2d 769, 771 (Tex.1982). Consequently, Carroll could have sold or otherwise disposed of the $16,083.47 note by public or private proceedings under section 9.504.

Finally, Carroll also had another remedy available to him under section 9.505(b), which provides that "a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation." *See* Tex.Bus. & Com.Code Ann. § 9.505(b) (Vernon Supp.1987). This section allowed him to retain the $16,083.47 note as his own in complete satisfaction of the $9,864.17 note.

Thus, Carroll had three available remedies under the facts proved: (1) he could sell the collateral at a public sale under the security agreement; (2) he could sell or otherwise dispose of the collateral in a public or private proceeding under section 9.504; or (3) he could retain the collateral in satisfaction of the debt under section 9.505. Each remedy required him to give notice to the Kennons, a requirement which will be discussed later in the opinion.

However, Carroll had only two alternatives, in reality, because the Uniform Commercial Code requires the secured party to make an election when a default occurs: he must either dispose of the collateral or retain it in full satisfaction of the secured debt. *See Tanenbaum,* 628 S.W.2d at 771–72. Therefore, Carroll had to choose between selling or otherwise disposing of the $16,083.47 note, either under the terms of the security agreement or section 9.504, or he had to retain it in satisfaction of the debt under section 9.505. *See id.*

The evidence was undisputed that Carroll did not purchase the $16,083.47 note or otherwise dispose of it in a public or pri-

vate proceeding. Essentially, he treated the note as his own and, because it was in default, foreclosed the deed of trust which secured it. Thus, the evidence conclusively established that Carroll elected to retain the note under section 9.505(b) in satisfaction of the Kennons' debt on the $9,864.17 note. *See id.*

Carroll's first point of error is that the court erred when it granted an instructed verdict against him on the "contractual theory of improperly conducted foreclosure" because the Kennons had not plead a cause of action based on contract. A pleading is sufficient if it contains a short statement of the cause of action sufficient to give fair notice of the claim involved. Tex.R.Civ.P. 47(a). The party being sued is entitled to fair and adequate notice of the nature of the cause of action asserted against him so that he can adequately prepare his defense. *Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex.1981). Allegations in the original petition will be considered in the light of this requirement.

The Kennons alleged that they had transferred the $16,083.47 note to Carroll under the terms of the Collateral Transfer of Note agreement which "required public sale of the $16,083.47 note after the giving of ten days notice to the debtor". Furthermore, they plead:

> Plaintiffs would show that no such notice was ever received by them and that as a result of their not having been notified *in accordance with the terms of the Uniform Commercial Code and Collateral Transfer of Note* [agreement], the Plaintiffs were divested not only of the balance of their interest in that $16,083.47 Note, such sum being $6,219.30, but also they were prevented from curing the default and proceeding to foreclose on the [31.25 acres], which had a value of not less than $80,000.00."

(Emphasis added). They also alleged that Carroll and his attorney, through fraud and conspiracy, had divested them of their interest in the property by failing to give them notice "in accordance with [the] law". They sued to recover the value of the equity in the 31.25 acres, which they alleged to be $32,000, "treble damages" of $96,000 and $10,000 in attorney's fees.

■ The pleading was sufficient as a matter of law to give Carroll fair and adequate notice that the Kennons were suing to recover damages based on his alleged violation of the contractual notice provision of the Collateral Transfer of Note agreement and the notice provisions of the Uniform Commercial Code. Point one is overruled.

■ Carroll argues in point two that the court should not have granted the instructed verdict on the "contractual theory of improperly conducted foreclosure" because he was the "holder" of the note under the security agreement and could enforce payment in his own name without first "foreclosing on the Collateral Transfer of Note". He relies on that portion of section 3.301 of the Uniform Commercial Code which provides that a "holder of an instrument whether or not he is the owner may ... enforce payment in his own name." *See* Tex.Bus. & Com.Code Ann. § 3.301 (Vernon 1968).

Section 1.201(20) of the Uniform Commercial Code defines a "holder" as "a person who is in possession of a document of title or an instrument or a certificated investment security drawn, issued or indorsed to him or to his order or to bearer or in blank." *See id.* at § 1.201(20) (Vernon Supp.1987). The $16,083.47 note was drawn to the order of the Kennons, and there is no evidence that it was ever endorsed to Carroll under the Collateral Transfer of Note agreement. Execution of the security agreement did not effect an endorsement of the note. *See Estrada v. River Oaks Bank & Trust Co.*, 550 S.W.2d 719, 726 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.).

Consequently, Carroll was the transferee without endorsement of an order instrument. As such, he was not the "holder" of the note and had to account for its possession by proving the transaction through which he acquired it. *See* Tex.Bus. & Com. Code Ann. § 3.201(c), comment 8 (Vernon 1968); *Lawson v. Finance America Private Brands*, 537 S.W.2d 483, 485 (Tex.Civ.

App.—El Paso 1976, no writ). Furthermore, as the transferee without endorsement of an order instrument, his rights to the collateral securing it were subject to and to be determined by the security agreement or, based on the facts proved, by sections 9.504 and 9.505 of the Uniform Commercial Code. *See* Tex.Bus. & Com. Code Ann. § 3.201, comments 4, 5 (Vernon 1968). Point two, which is based on Carroll's mistaken belief that he was the "holder" of the $16,083.47 note, is overruled.

He contends in the third point that the court improperly granted an instructed verdict because the evidence created a fact issue on notice. He points out that the Kennons' addresses were not included on the lines provided for the debtor's address in the Collateral Transfer of Note agreement, that his attorney testified he attempted to notify the Kennons of the foreclosure sale at their last known addresses and that Norma (Kennon) Moree's notice was actually received by her daughter on June 21, 1980. He also points out that he posted notice of the foreclosure sale at the courthouse door as required by the deed of trust. Carroll argues that this evidence precluded an instructed verdict because it raised a fact issue on notice.

█ An instructed verdict can be upheld only if the probative evidence does not raise a material fact issue. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983). After an appellate court has reviewed all of the evidence in the light most favorable to the party against whom the instructed verdict was granted, discarding all evidence and inferences in favor of the prevailing party, a fact issue exists if reasonable minds can then differ on the controlling facts. *Id.* Ordinarily, notice is a question of fact. *O'Ferral v. Coolidge*, 149 Tex. 61, 228 S.W.2d 146, 148 (1950). A question of whether a communication constitutes "notice" is usually a fact issue. *See Barclays American/Business v. E & E Enterprises*, 697 S.W.2d 694, 700 (Tex. App.—Dallas 1985, no writ).

From the three remedies available to him for disposing of the $16,083.47 note when default occurred on the $9,864.17 note, Carroll chose to retain the $16,083.47 note under section 9.505(b) in satisfaction of the Kennons' debt on the $9,864.17 note. *See* Tex.Bus. & Com.Ann. § 9.505(b) (Vernon Supp.1987). However, this section required him to notify the Kennons in writing that he was proposing to retain the $16,083.47 note:

(b) In any other case involving consumer goods or any other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. *Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection....* If the secured party receives objection in writing from a person entitled to receive notification within twenty-one days after the notice was sent, the secured party must dispose of the collateral under Section 9.504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation.

*See id.* (emphasis added). Clearly, Carroll did not attempt to send the Kennons written notice, in so many words, that he proposed to retain the $16,083.47 note in satisfaction of their debt. Instead, he attempted to send them a standard, printed "Notice of Trustee's Sale" which announced that default had occurred on the $16,083.47 note and that a trustee's sale under the deed of trust would be held on July 1, 1980. The Kennons were not legally or contractually entitled to receive notice of the foreclosure sale under the notice provision of the deed of trust because they were not the "debtor" on the $16,083.47 note. Nevertheless, Carroll claims that the evidence relating to his attempt to notify the Kennons of the foreclosure sale created a fact issue on notice which precluded an instructed verdict.

█ Section 1.201(25) of the Uniform Commercial Code states in part:

(25) A person has "notice" of a fact when

(A) he has actual knowledge of it; or

(B) he has received a notice or notification of it; or

(C) *from all the facts and circumstances known to him at the time in question he has reason to know that it exists.*

*Id.* at § 1.201(25) (Vernon 1968) (emphasis added). Whatever fairly puts a person on inquiry constitutes actual notice of all other facts that a reasonable and diligent inquiry would have discovered. *See Woodward v. Ortiz,* 150 Tex. 75, 237 S.W.2d 286, 289 (1951). However, this rule only applies when the means of knowledge are at hand and the party being charged with notice has a duty to pursue an inquiry. *See Flack v. First Nat. Bank of Dalhart,* 148 Tex. 495, 226 S.W.2d 628, 631–32 (1950). A fact which is claimed to put a person on notice of all facts discoverable through a reasonable inquiry must be of such a nature that it would normally incite an inquiry. *Exxon Corp. v. Raetzer,* 533 S.W.2d 842, 846 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). Rumors, vague statements, and dubious or equivocal circumstances which only arouse suspicion or create speculation are not "facts" sufficient to incite an inquiry. *Id.*

■ Thus, an essential question is whether notice to the Kennons that the Hendricks had defaulted on the $16,083.47 note and that the trustee of the deed of trust securing the note was going to sell the 31.25 acres at a foreclosure sale on July 1, 1980, would have been sufficient to incite an inquiry on their part. Furthermore, another material question is whether a reasonable inquiry on their part would have disclosed that a default had also occurred on the $9,864.17 note and that Carroll was proposing to retain and, in fact, retaining the $16,083.47 note as his own in satisfaction of their debt. If so, then the Kennons would have been charged with actual notice of such facts. *See Woodward,* 237 S.W.2d at 289. Because reasonable minds could differ on the answers to these questions, they were for the jury to determine rather than for the court to decide peremptorily by an instructed verdict. *See Corbin,* 648 S.W.2d at 295.

Section 1.201(38) also provides a definition of "send" as it relates to notice:

(38) "Send" in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed and in the case of an instrument to an address specified thereon or otherwise agreed, *or if there be none to any address reasonable under the circumstances.* The receipt of any writing or notice within the time at which it would have arrived if properly sent has the effect of a proper sending.

Tex.Bus. & Com.Code Ann. § 1.201(38) (Vernon 1968) (emphasis added). The Kennons claimed that they did not have actual notice of the foreclosure sale until long after it had occurred, although Norma (Kennon) Morree admitted that her daughter had received her notice of the foreclosure on June 21, 1980. Their addresses had not been included in the Collateral Transfer of Note agreement, but Van Kennon claimed that he had left their correct addresses on a piece of paper with an unnamed person who attended the closing of the sale of the 31.25 acres to the Hendricks. Carroll and his attorney both claimed that notice of the foreclosure sale had been mailed to the Kennons at their last known addresses.

■ Any questions of whether the addresses on the envelopes containing the Kennons' notices of foreclosure were "reasonable under the circumstances", as specified in section 1.201(38), were also for the jury because reasonable minds could differ on their answer. Consequently, the instructed verdict was improperly granted by the court in favor of the Kennons because the evidence created a material fact issue on notice under section 9.505(b). Point three is sustained, the judgment is reversed, and the cause is remanded for a new trial.

The material questions of law on a retrial will relate to whether Carroll complied with the notice provision in section 9.505(b) and with the contractual notice provision of the

Collateral Transfer of Note agreement. The security agreement outlined the minimum requirements of "reasonable notice" to the debtor as follows:

> The requirement of reasonable notice to Debtor [the Kennons] of the time and place of any Public Sale of the COLLATERAL [$16,083.47 note], or of *the time after which any Private Sale or any other intended disposition thereof is to be made,* shall be met if such notice is mailed, postage prepaid, to Debtor [the Kennons] at the address of Debtor [the Kennons] designated at the beginning of this instrument, at least five days before *the date of any Public Sale or at least five days before the time after which any Private Sale or other disposition is to be made.*

(Emphasis added). Although Carroll had the alternative of selling the $16,083.47 note at a public sale under the Collateral Transfer of Note agreement, the minimum requirements of "reasonable notice" contractually obligated him to also give the Kennons notice of "the time after which any Private Sale or any other intended disposition thereof is to be made ... at least 5 days before the time after which any Private Sale or other disposition is to be made." Retention of the note in satisfaction of the debt under section 9.505(b) would be included within the phrase "any other intended disposition".

The material fact issues on a retrial will relate, as discussed previously, to whether the addresses on the envelopes containing the Kennons' notice of the foreclosure sale were "reasonable under the circumstances" and whether, "from all the facts and circumstances known to [them] at the time in question", the Kennons were charged with actual notice that Carroll was retaining the note in satisfaction of their debt. *See* Tex. Bus. & Com.Code Ann. § 1.201(25), (38) (Vernon 1968); *see also Woodward,* 237 S.W.2d at 289.

■ Furthermore, the Kennons' damages, if any, must be determined on a retrial under section 9.507(a) of the Uniform Commercial Code. *See* Tex.Bus. & Com. Code Ann. § 9.507(a) (Vernon Supp.1987).

A secured party who disposes of collateral without complying with the notice provisions of the Uniform Commercial Code is liable for the debtor's "actual losses" or for the statutory penalty provided in section 9.507(a). *First City Bank-Farmers Branch, Tex. v. Guex,* 677 S.W.2d 25, 29 (Tex.1984). The debtor cannot recover both. *Id.* at 30. Furthermore, the debtor cannot recover his attorney's fees under section 9.507(a), but may recover them in a suit based on a violation of the notice provisions of the Uniform Commercial Code or a security agreement, if they are otherwise recoverable under article 2226. *Id.; see also* Tex.Civ.Prac. & Rem.Code Ann. § 38.-001(8) (Vernon 1986) (formerly Tex.Rev. Civ.Stat.Ann. art. 2226 (Vernon 1971)). The Kennons' actual loss, assuming they are entitled to recover any damages under section 9.507(a), would not be limited just to the difference between the unpaid balances of the two notes. Their actual loss would also include the equity they lost in the 31.25 acres when they were denied the right to redeem the collateral under section 9.506. *See* Tex.Bus. & Com.Code Ann. § 9.506 (Vernon Supp.1987). The equity would be determined by the difference between the fair market value of the 31.25 acres and the liens against it, to be determined at the time Carroll disposed of the collateral without complying with the notice provisions of the Uniform Commercial Code. This would also be true in a suit for actual damages caused by his violation, if any, of the notice provision of the Collateral Transfer of Note agreement.

Point four is not reached. Reversed and remanded.