COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO.
2-01-393-CV
 
KEITH KIDWELL           
           
           
           
           
           
APPELLANT
V.
GEORGE C. BLACK, JR. d/b/a       
           
           
           
           
APPELLEE
DALLAS MORTGAGE COMPANY
------------
FROM THE 67
TH DISTRICT COURT OF TARRANT
COUNTY
------------
OPINION
------------
I. INTRODUCTION
This case involves the reformation of a
series of deeds and related instruments that contain an incorrect legal
description of a parcel of property. Appellee George C. Black d/b/a Dallas
Mortgage Company ("Black") sued Appellant Keith Kidwell and Lincoln
Financial, Inc. ("Lincoln"), K. Wayne Fontenot, Edna Faye Williamson,
and Wallace Simpson, seeking reformation of various deeds, deeds of trusts, and
assignments. A Rule 11 Agreement was executed that resulted in the trial court
signing a partial judgment in which it found that Black had a valid lien against
the property as to Williamson and that Lincoln did not own any interest in the
property at any time after October 10, 1990. Kidwell was not a party to the
agreement.
Kidwell and Black proceeded to a bench
trial, after which the trial court signed a judgment that ordered the
reformation of all the necessary documents in favor of Black. Kidwell appeals
from the trial court's judgment. We affirm.
II. FACTUAL SUMMARY
The property at issue is correctly
described as "Lot 14, Block 2, PASADENA HEIGHTS, an Addition to the City of
Fort Worth, Tarrant County, Texas, according to the plat, recorded in Volume
310, page 4, Deed Records of Tarrant County, Texas." The dispute arose out
of an incorrect legal description of the property that was carried forward
through several transfers. The facts regarding the transfer of the property were
undisputed at trial:

 On July 18, 1988, Lincoln purchased
 "Lot 14, Block 2" receiving a Trustee's Deed. [Emphasis
 added.]
  
 On October 10, 1990, Lincoln
 transferred the property via Special Warranty Deed to Fontenot. The property
 was incorrectly described as "Lot 14, Block 7." [Emphasis
 added.]
  
 Also on October 10, 1990, Fontenot
 executed a Special Warranty Deed to Williamson, retaining a vendor's lien.
 Once again, the property was incorrectly described as "Lot 14, Block
 7." [Emphasis added.]
  
 On October 17, 1990, Williamson
 executed a Deed of Trust for the benefit of Fontenot, and the property was
 incorrectly described as "Lot 14, Block 7." [Emphasis
 added.]
  
 On July 1, 1992, Fontenot
 transferred his lien to First Approach Financial via a Transfer of Lien. The
 property was correctly described as "Lot 14, Block 2."
 [Emphasis added.]
  
 On October 28, 1993, First Approach
 Financial transferred the lien to Simpson. The transfer documents correctly
 described the property as "Block 2." [Emphasis added.]
  
 On April 25, 1995, Simpson
 transferred the lien to Black incorrectly describing the property as
 "Lot 14, Block 7." [Emphasis added.]
  
 On June 1, 1999, Kidwell purchased a
 Sheriff's Deed which purported to transfer "Block 2, Lot
 14" from Lincoln. [Emphasis added.]
  

Upon learning of Lincoln's foreclosure,
but before buying the property, Kidwell researched the deed records and found
that Lincoln was the record owner of the "Lot 14, Block 2" property.
Kidwell also found that the property taxes had been paid on the property. There
is no "Lot 14, Block 7" property in the Pasadena Heights addition.
Furthermore, either Williamson, her family, or her tenants have continuously
occupied, maintained, and insured the Block 2 property since October 10, 1990.
III. LEGAL ANALYSIS
Kidwell raises six points on appeal,
arguing that (1) the trial court lacked jurisdiction to reform the deeds because
the statute of limitations had expired; (2) Black lacked standing to file suit
because he was not in privity with Kidwell; (3) the trial court could not reform
the deeds without giving notice to the other interested defendants; (4) the
trial court granted more relief than was requested in the pleadings; (5) the
trial court did not properly follow the Texas recording statutes when it held
Kidwell to a higher standard of notice than Black; and (6) Kidwell was an
innocent bona fide purchaser for value.
       
A. Final Judgment
We address Kidwell's third point first to
determine this court's jurisdiction to hear this appeal.(1)
Kidwell argues that the trial court's judgment is not final because necessary
parties to the suit were either not served with notice or not included in the
trial court's judgment. Specifically, Kidwell argues that Fontenot and Simpson
were necessary parties to the lawsuit who were sued but never served with
process. Therefore, Kidwell argues that because the judgment of the trial court
does not include Fontenot and Simpson, the judgment is invalid and must be
reversed.
As a general rule, an appeal may be taken
only after a final judgment has been signed.(2) 
"A judgment is final for purposes of appeal if it disposes of all pending
parties and claims in the record."(3) 
However, when a named defendant is not served with process and does not file an
answer, and when the plaintiff fails to exhibit any indication that he expects
to obtain service over the defendant, the defendant is considered to have been
nonsuited.(4)  Under such circumstances, the
judgment is considered final and appealable.(5)
Neither Fontenot nor Simpson was served
with process, and neither filed an answer with the trial court.(6) 
Black included Fontenot and Simpson in its first amended petition, but failed to
include them in his motion for summary judgment or in any other pleading filed
in the trial court. The trial court even stated in its judgment that Fontenot
and Simpson had not been served and were not before the trial court. We hold
that the trial court's judgment was final and overrule Kidwell's third point.
       
B. Statute of Limitations
Kidwell argues in his first point that the
trial court lacked jurisdiction to hear the case because Black's reformation
cause of action was barred by the statute of limitations. Even though Kidwell
incorrectly argues that his statute-of-limitations defense is jurisdictional,(7)
we address his argument that the limitations had expired and that Black's cause
of action is time-barred.
Regarding the statute of limitations, when
a mutual mistake is made as to the legal effect of a deed, the statute of
limitations begins to run either when the mistake is discovered or when, in the
exercise of reasonable diligence, the mistake should have been discovered.(8)
The question of when a mistake should have been discovered is a fact question.(9)
If an appellant is attacking the legal
sufficiency of an adverse answer to an issue on which he had the burden of
proof, the appellant must overcome two hurdles.(10) 
First, the record must be examined for evidence that supports the finding, while
ignoring all evidence to the contrary. Second, if there is no evidence to
support the finding, then the entire record must be examined to see if the
contrary proposition is established as a matter of law.(11)
Kidwell contends that when the lien
documents were transferred to Black on April 25, 1995, Black deliberately
changed the property description in the documents to reflect "Block 7"
instead of "Block 2." Therefore, according to Kidwell, Black had
notice of the problems in the deeds when the deed of trust was transferred to
him. Kidwell's references to the record do not, however, substantiate this
allegation, and the record is void of any attempt by Black to correct or change
the property description from "Block 2" to "Block 7" when he
purchased the deed of trust.
Kidwell also argues that because Black
acquired a title insurance policy and because the title policy would have
revealed the error in the deeds, Black had notice of the error in the
description of the property. Black testified, however, that he relied on the
title policy to prepare the property description in the transfer documents. He
also testified that he was not aware of any problems with the title of the
property until June 1, 1999.
The trial court found that Williamson is
the owner of the property and that Black is the owner of a valid lien against
the property. The trial court did not address Kidwell's statute-of-limitations
defense in the judgment. As a result, the trial court implicitly found that the
statute of limitations had not run. Ignoring all contrary evidence, we hold that
Black's testimony supports the trial court's implicit finding.(12)
We overrule Kidwell's first point.
       
C. Standing
In his second point, Kidwell argues that
Black lacked standing as a matter of law because there was no privity between
Kidwell and Black. A party's standing to file a lawsuit requires a real
controversy between the parties, and the resolution of that controversy is
dependent upon the judgment sought from the trial court.(13)
Black's standing is based on his interest
in the deed of trust, which is dependent upon the validity of Williamson's
interest in the property.(14)  In
opposition to Black's claim, Kidwell maintains that his interest in the property
is valid.  Because of the obvious conflict, we hold that Black had standing
to bring this suit and overrule Kidwell's second point.
       
D. Relief Granted
Kidwell argues in his fourth point that
the trial court erred in granting Williamson relief because she did not file any
pleadings with the trial court requesting the relief that was granted.
Kidwell correctly points out that nothing
in the record indicates that Williamson requested any relief in the trial court.
Black alleged in his pleadings, however, that Lincoln did not own any interest
in the property at any time after October 10, 1990; therefore, it had no
interest in the property to transfer to Kidwell at the sheriff's sale. Black
requested the trial court to reform the deeds to reflect the correct property
description. Black also requested a declaratory judgment that Williamson
acquired title to the property by adverse possession.
"The judgment of the court shall
conform to the pleadings [and] the nature of the case proved . . . and shall be
so framed as to give the party all the relief to which he may be entitled either
in law or equity."(15)  The trial
court's judgment grants all the relief requested by Black.
Because Black had standing to bring this
suit due to the controversy existing between Black and Kidwell, we hold that the
trial court's judgment is supported by the pleadings. We overrule Kidwell's
fourth point.
       
E. Notice and Bona Fide Purchaser Status
Kidwell argues in his fifth point that
there is no evidence to support the trial court's finding that Kidwell had
notice of the discrepancies in the property descriptions.  Specifically,
Kidwell argues that the trial court improperly followed the Texas recording
statute by holding Kidwell to a higher standard of notice than Black.(16) 
Kidwell argues in his sixth point that the trial court incorrectly reformed the
instruments to the detriment of Kidwell because Kidwell is an innocent bona fide
purchaser for value.  Both of these arguments depend on Kidwell's status as
an innocent bona fide purchaser for value.
Kidwell acquired his title via a sheriff's
deed.  The deed states that the Sheriff conveyed to Kidwell "all the
estate, right, title and interest which . . . Lincoln . . . had [in the
property] on the 9th day of April A.D. 1999."  The deed
contains no covenant of warranty and only attempts to convey whatever interest
Lincoln may have held.(17)  Thus, the deed
is a quitclaim deed.(18)
The purchaser of a quitclaim deed takes
the deed "with notice of all defects in the title and equities of third
persons."(19)  Because Kidwell is the
grantee of a quitclaim deed, he cannot be a bona fide purchaser.(20) 
Therefore, Kidwell had notice of the defects in the title as a matter of law.(21) 
We overrule Kidwell's fifth and sixth points.
IV. CONCLUSION
Having overruled each of Kidwell's six
points, we affirm the trial court's judgment.
                                                           
                                                                   
LEE ANN DAUPHINOT
                                                                   
JUSTICE
PANEL B: DAUPHINOT, GARDNER, and WALKER,
JJ.
[DELIVERED MARCH 20, 2003]

1. See Rape v. M.O. Dental Lab, No. 2-01-302-CV,
slip op. at 4-5, 2003 WL 69534, at *2 (Tex. App.--Fort Worth Jan. 9, 2003, pet.
filed) (addressing appellate court's jurisdiction before reaching merits of
case).
2. Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (Vernon
Supp. 2003); Lehmann v. Har-Con Corp., 39 S.W.3d 191, 195 (Tex. 2001).
3. Lehmann, 39 S.W.3d at 195.
4. Youngstown Sheet & Tube Co. v. Penn, 363
S.W.2d 230, 232 (Tex. 1962); see also Rape, slip op. at 5, 2003 WL
69534, at *2 (holding that under similar facts a summary judgment was final for
purposes of appeal).
5. Youngstown, 363 S.W.2d at 232.
6. See id.
7. See In re Marriage of Collins, 870 S.W.2d 682,
684 (Tex. App.--Amarillo 1994, writ denied) (describing section 16.004 as a
general statute of limitations that is not jurisdictional).
8. Brown v. Havard, 593 S.W.2d 939, 944 (Tex.
1980).
9. Id.
10. Victoria Bank & Trust Co. v. Brady, 811
S.W.2d 931, 940 (Tex. 1991).
11. Id.; Sterner v. Marathon Oil Co.,
767 S.W.2d 686, 690 (Tex. 1989).
12. See Victoria Bank & Trust, 811 S.W.2d at
940.
13. Tex. Ass'n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 446 (Tex. 1993).
14. See id. (explaining the general test for
standing).
15. Tex. R. Civ. P. 301.
16. Tex. Prop. Code Ann. § 13.001 (Vernon Supp. 2003).
17. See Woodward v. Ortiz, 237 S.W.2d 286, 291
(Tex. 1951).
18. See id.; see also Diversified, Inc. v.
Hall, 23 S.W.3d 403, 407 (Tex. App.--Houston [1st Dist.] 2000,
pet. denied) (op. on reh'g).
19. Woodward, 237 S.W.2d at 291-92; see also
Diversified, 23 S.W.3d at 407.
20. Diversified, 23 S.W.3d at 407.
21. See id.