BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
THE HONORABLE LOUIS B. GREEN, COUNTY COUNSEL, COUNTY OF EL DORADO, has requested an opinion on the following question:
Where streets within a residential subdivision adjacent to an airport are owned and maintained by an airport district but are part of the county road system, is the airport district or the county responsible for regulating the operation of aircraft on the streets?
 CONCLUSION
Where streets within a residential subdivision adjacent to an airport are owned and maintained by an airport district but are part of the county road system, the county is solely responsible for regulating the operation of aircraft on the streets.
 ANALYSIS
Prior to 1987, a county ("County") owned and operated an airport that was adjacent to a residential subdivision. The streets of the subdivision were built not only for vehicular traffic but also to allow the residents to taxi their airplanes between the airport and tie-down parking spaces and private hangars on their properties. County ordinances regulated the aircraft street traffic in a number of respects, including weight and speed limits, lighting requirements, and parking restrictions.
In 1987, the County formed a local airport district ("District") pursuant to the California Airport District Act (Pub. Util. Code, §§22001-22975) to operate and maintain the airport. By quitclaim deed, the County conveyed to the District its interest in various properties within the boundaries of the District on condition that the properties so conveyed shall remain open for public use." These properties included the residential subdivision streets upon which the aircraft had been permitted to taxi. The County transferred revenue to the District to cover some of the costs of road maintenance responsibilities, and thereafter the District assumed sole responsibility for repairing and maintaining the streets of the subdivision. However, the County did not revise its regulations concerning the taxiing of aircraft on the streets and did not remove the streets from its official list of county highways.
We are asked to determine which public entity has the authority to regulate the operation of aircraft on the subdivision streets owned and maintained by the District: the County, the District, or both entities. We conclude that the County, and not the District, has such authority.
An airport district is established in three basic steps: (1) an initial resolution adopted by the county board of supervisors (Pub. Util. Code, § § 22151-22226); (2) an election in the county, or that portion of the county included within the proposed district, to determine whether the district shall be formed and, if so, to elect a governing board of five directors (Pub. Util. Code, §§22226-22232; 22401); and (3) a second resolution by the board of supervisors, duly recorded in the county and filed with the Secretary of State, certifying that a majority of the votes were cast in favor of formation and declaring that the district is formed (Pub. Util. Code, §§ 22256-22259). Public Utilities Code section 22553 specifies the general powers of an airport district:
"A district may do all of the following:
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"(c) Provide and maintain public airports, spaceports, and landing places for aerial and space reentry traffic.
"(d) Acquire by purchase, condemnation, donation, lease, or otherwise, real or personal property necessary to the full or convenient exercise of any of its powers or purposes.
"(e) Improve, construct or reconstruct, lease, furnish or refurnish, use, repair, maintain, control, sell, or dispose of the property of the district, including any buildings, structures, lighting equipment, and all other equipment and facilities necessary for those purposes."
A district "may exercise the powers expressly granted or necessarily implied" (Pub. Util. Code, § 22004), and its five-member governing board of directors "shall make all rules governing the use of the airports and spaceports, landing places for aerial traffic, and other aerial facilities of the district that the board determines to be necessary" (Pub. Util. Code, § 22555).
With this statutory background in mind regarding airport districts, we turn to the Vehicle Code[1] and its provisions governing local regulatory authority over the use of public streets.[2] Section 21114 states:
"If a local authority finds that a city street or county road under its jurisdiction adjacent to an airport has been specifically designed and constructed, with the prior approval of the local authority, so as to safely permit the use thereof by regular vehicular traffic and also the taxiing of aircraft thereon between the airport and the place where such aircraft are hangared or tied down, the local authority may by resolution or ordinance designate such street or road or portion thereof for such combined use and prescribe rules and regulations therefor which shall have the force of law. No such street or road shall be so designated for a distance of more than one-half mile from the airport, provided, the finding of the local authority in this respect shall be conclusive. Upon such designation becoming effective, it shall be the sole responsibility of the local authority to enforce the provisions of the Vehicle Code and all rules and regulations adopted by it upon such street or road. Upon such designation becoming effective it shall be lawful to taxi aircraft upon such street or road in accordance with the rules and regulations prescribed as aforesaid and said aircraft need not be licensed under this code or comply with other provisions thereof."
The term "local authority" means "the legislative body of every county or municipality having authority to adopt local police regulations." (§ 385.) For a county, that legislative body is ordinarily the board of supervisors. (Cal. Const., art XI, § 7; Baldwin v. County of Tehama
(1994) 31 Cal.App.4th 166, 173; 67 Ops.Cal.Atty.Gen. 145 (1984).) For purposes of our analysis, we may assume that the County's initial designation and regulation of these subdivision streets for aircraft taxiing were consistent with the terms of section 21114. (See Sts. 
Hy. Code, §§ 25, 941.) The County's rules and regulations thus had "the force of law" prior to 1987, and the County had "sole responsibility" for enforcing the Vehicle Code and its own rules and regulations with respect to these streets.
Did the County's conveyance of the streets to the District in 1987 mark the end of the County's regulatory authority over the taxiing of aircraft by the residents to their private hangers? In our view, the County continues to have responsibility to enforce the Vehicle Code and its aircraft regulations pursuant to section 21114 as the streets have retained their status as "county roads."
The term "county road" is not defined in the Vehicle Code, but Streets and Highways Code section 25 contains a definition for "county highway" — a term that is used interchangeably with the term "county road":
"As used in this code, "county highway' means any highway which is:
"(a) Laid out or constructed as such by the county.
"(b) Laid out or constructed by others and dedicated or abandoned to or acquired by the county.
"(c) Made a county highway in any action for the partition of real property.
"(d) Made a county highway pursuant to law."[3]
No public or private road may become a county highway unless and until the board of supervisors or a designee specifically accepts it as such. (Sts. Hy. Code, § 941; see 47 Ops.Cal.Atty.Gen. 191, 192-194 (1966).)
By the same token, once a street or highway has been accepted as a part of the county road system, it does not readily lose such classification. Streets and Highway Code section 901 states:
"All county highways, once established, shall continue to be county highways until abandoned by order of the board of supervisors of the county in which such highways are situated, by operation of law, or by judgment of a court of competent jurisdiction. No county highway laid out by the board of supervisors as provided in this division, or used and worked as provided in this division, shall be abandoned or cease to be a county highway except as prescribed in this section."
We have previously observed that "abandonment" of a street or highway has a specific and narrow meaning. In 77 Ops.Cal.Atty.Gen. 94, 96 (1994), we stated:
"For an abandonment of a public thoroughfare to occur (i.e. "vacation'), the public's right to use the thoroughfare must be terminated. [Citations.] As stated in City of Los Angeles v. Fiske (1953)117 Cal.App.2d 167, 172: "The act of vacating can be done only upon a finding that the property in question is unnecessary for present or future uses as a street. (Sts. Hwys. Code, §§ 8300-833 1.)'
In transferring its interest in the subdivision streets to the District, the County did not make a finding that the streets were no longer necessary for public use. On the contrary, it specifically required that the streets remain open for public use.
As there has not been a "judgment of a court of competent jurisdiction" terminating the status of these streets as county roads, we are left with the question whether the status of the streets was changed in 1987 "by operation of law" for purposes of Streets and Highways Code section901 The facts indicate otherwise. Not only did the County require that the streets "remain open for public use," it also continued to help fund maintenance and repair of the streets, and it made no effort to repeal its ordinances regulating the taxiing of aircraft on the streets. Indeed, the County continues to list the streets as county highways on its records maintained by the county road commissioner. (See Sts. Hy. Code, § 908) Taken together, these circumstances demonstrate that the District's subdivision streets remain part of the county road system.
The terms of section 21114 are to be applied according to the ordinary meaning of the language used.[4] As the "local authority," the County has "sole responsibility to enforce the provisions of the Vehicle Code and all rules and regulations adopted by it upon such street or road." Section 21114 gives the District no role to play in regulating the use of these subdivision streets.
In 67 Ops.Cal.Atty.Gen. 145 (1984), we examined a similar situation. There, the roads in question were not part of the county highway system, and we determined that a community services district was the "local authority" that had been given exclusive regulatory control of the streets under the Vehicle Code. We pointed out that if some other public entity "were also authorized to enact the ordinances in question, confusion and lack of uniformity could result." (Id. at p. 148.) Likewise, here, the County has been granted sole responsibility" pursuant to the terms of section 21114 to regulate the use of the District's subdivision streets. If the District were granted concurrent jurisdiction, confusion and lack of uniformity could result.[5]
We conclude that where the streets within a residential subdivision adjacent to an airport are owned and maintained by an airport district but are part of the county road system, the county is solely responsible for regulating the operation of aircraft on the streets.
[1] All references hereafter to the Vehicle Code are by section number only.
[2] Section 21 provides:
"Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the State and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized herein."
[3] Statutes relating to the same subject matter must be read together and harmonized if possible. (Brown v. West Covina Toyota (1994)26 Cal.4th 555, 565-566.) "Where two codes are to be construed, they must be regarded as blending into each other and forming a single statute. [Citations.]" (Meninga v. Raley "s Inc. (1989) 216 Cal.App.3d 79, 90; accord, Austin v. Board of Retirement (1989) 209 Cal.App.3d 1528,1532.)
[4] In Hunt v. Superior Court (1999) 21 Cal.4th 984, 1000, the court observed:
"Our role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.] In determining intent, we look first to the words of the statute, giving the language its usual, ordinary meaning. If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs. [Citation.]"
[5] Unlike the community services district in our 1984 opinion, the District cannot be considered a county or municipality having authority to adopt local police regulations." (§ 385.)